FOWLER v. WOOD.

1. An assignment of homestead to a bankrupt by the United States District Court is absolutely void as against then existing judgments based upon debts contracted prior to the constitution of 1868.
2. Two judgments were obtained on ante-homestead debts, after which the judgment debtor was adjudged a bankrupt, and had a homestead assigned to him by the bankrupt court. He then made a payment with his own money on the older judgment, and in consideration therefor this judgment was assigned to him. Afterwards he was discharged in bankruptcy, sold his land to Mrs. S., and assigned to her this judgment. *Held,* that the older judgment was satisfied, and only the junior judgment remained as a lien.

Before KERSHAW, J., Spartanburg, October, 1888.

This appeal was from the following decree:

This was a proceeding commenced by a rule on the sheriff to show cause why the proceeds of a sale under execution against the defendant, B. T. Wood, should not be paid to plaintiff. The

presiding judge directed a reference to C. P. Sanders, Esq., to ascertain the facts and determine the rights of parties, and the case is now heard on the report of the referee, dated October 4, 1888, and exceptions of Mrs. E. J. Smith, who was made a party to the proceeding, as claiming to be the owner of an older judgment against B. T. Wood, to which the proceeds of said sale should have been applied. The facts are stated in the report for the most part, and such as are omitted are herein stated, so far as necessary to this decision.

The case is to be determined upon the correctness of the finding of the referee, that the judgment set up by Mrs. Smith was paid. It is claimed, first, that the judgment was paid by lapse of time, having been recovered more than twenty years before the land was levied and sold. I think this contention is not well founded, because there was a solemn admission of the judgment in writing by the debtor, in his schedule in bankruptcy, filed as late as August 4, 1873. See *Sartor* v. *Beaty*, 25 S. C., 293.

It is next claimed that it is paid, because it was heretofore, July 8, 1874, assigned to the judgment debtor, and that it thereby became *ipso facto* paid, upon well known principles of law. Among the effects of the debtor included in the schedule in bankruptcy filed by him, was the tract of land in question, which was therein set down as property exempt from assignment under the bankrupt acts and homestead laws, and it was set apart to him as a homestead by commissioners appointed for that purpose, and no exceptions were taken to such assignment. At the time of these proceedings the judgment of the plaintiffs and that now held by Mrs. Smith, as assignee, were in existence, both founded on causes of action which were in existence before the adoption of the constitution of 1868, and other homestead laws, but the latter was the prior in date.

After the proceedings in bankruptcy above stated, to wit, July 8, 1874, B. T. Wood, the debtor, having been advised that there was probably some doubt about the title to his homestead as against these judgments, and with a view to protect the same, bought the oldest judgment against him, and the same was assigned to him (without recourse) by A. L. Moore, the plaintiff in said judgment. Afterwards, on March 19, 1887, in order to

secure the title of the said land to Mrs. E. J. Smith, which had been sold and conveyed to her by the said B. T. Wood, he assigned to her the judgment previously assigned to him by A. L. Moore. Whereupon the execution of the plaintiff was levied upon the land, and the same was sold and bought by the said Mrs. E. J. Smith for a sum less than the amount of the judgment assigned to her.

It is evident from this statement that plaintiff's judgment never had a lien upon the land in question, except in subordination to that of the respondent, Mrs. Smith, and that unless extinguished, the latter is entitled to the proceeds of the sale thereof, and the rule must be discharged. It is unquestionably true that the union of debtor and creditor in the same persons will operate as an extinguishment of a debt, or the discharge of a lien for such debt unless something is shown to the contrary. But equity will keep an encumbrance alive, or consider it extinguished, as will best serve the purposes of justice and the actual *intention* of the party. It must be, however, for an innocent purpose and injurious to no one. *Gardner* v. *Astor*, 3 Johns. Ch., 53; *Starr* v. *Ellis*, 6 *Id.*, 393. In *Forbes* v. *Moffat* (18 Ves., 390), it is said: "Upon this subject a Court of Equity is not guided by the rules of law. It will sometimes hold a charge extinguished when it would subsist at law, and sometimes preserve it when at law it would be merged. The question is upon the intention, actual or presumed, of the person in whom the interests are united." See 2 *Pom. Eq.*, 700. The principle is recognized here: *Agnew* v. *R. R. Co.*, 24 S. C., 23; *Carson* v. *Richardson*, 3 McCord, 528; *Wilson* v. *Wright*, 7 Rich., 404; *Kirkpatrick* v. *Ford & Aiken*, 2 Speer, 113. See also *Factors Ins. Co.* v. *Murphy*, 111 U. S., 738. It is true, most of these cases are in relation to mortgages, but it seems to me the principle is the same.

Here there is no question of the intention, and no one was injured by the lien being kept open to protect the title to the land. The plaintiffs had no demand against the defendant, Wood, that could be enforced against him personally after his discharge in bankruptcy. It may be that his lien on the land was not displaced, but it was subservient to that of the older judgment creditor. I can see no reason why the bankrupt could not purchase

and hold open this older lien on his property to save his home-stead. Certainly the plaintiffs here have no equity in their favor, and the court is not called upon to lend its assistance, as invoked in this proceeding.

It is ordered and adjudged, that the rule be discharged, and the plaintiffs pay the costs therein.

*Mr. S. J. Simpson*, for appellant.

*Mr. J. S. R. Thomson*, contra.

The Alfred Moore judgment was not satisfied by its being assigned to Wood, because there was no intention that it should be, satisfied, or that the lien should be merged in the title of Wood. 2 *Pom. Eq. Jur.*, 791; 7 *Wait Act. & Def.*, 324; 3 *Lead. Cas. Real Prop.*, 237, 242, 246; *Freem. Judg.*, 235a; 1 *Jones Mort.*, § 848; 6 *Johns. Ch.*, 396; 14 *Pick.*, 374; 5 *Watts*, 456; 111 *U. S.*, 743; 3 *McCord*, 532; 2 *Speer*, 112; 7 *Rich.*, 401; 4 *Rich. Eq.*, 86; 24 *S. C.*, 23; 163 *Mass.*, 474; 18 *Wall.*, 4; 3 *Pars. Cont.*, 520; 115 *U. S.*, 543. To prevent merger in a case like this, the intention governs, and it is immaterial whether such intention is expressed or implied. *Agnew* v. *R. R. Co.*, 24 S. C., 23; 2 *Pom. Eq. Jur.*, 792; 3 *Lead. Cas. R. Prop.*, 239, 241; 1 *Jones Mort.*, § 848. As a matter of fact, the intention in this case against merger is clearly manifest in the written paper itself. 3 *Lead. Cas. R. Prop.*, 235; 7 *Rich.*, 404. The title and the encumbrance never did meet in Wood at one and the same time. *Pars. Cont.*, 245, 261; 20 *Wall.*, 407. The appellant is barred by his own *laches* and that of his assignor. 7 *Rich.*, 399; 25 *S. C.*, 112. The rule was improperly taken out in this case. 2 *Speer*, 112.

October 16, 1889. The opinion of the court was delivered by Mr. JUSTICE McGOWAN. In 1873, one B. T. Wood filed his petition in bankruptcy. At the time there were several judgments against him, the oldest, that of A. L. Moore for $1,252, and the next in priority that of the plaintiffs, Fowler, Foster & Co. In these bankruptcy proceedings a certain tract of land was set off to the petitioner, Wood, as his homestead, and was held by

him until 1879, when he sold the land to M. F. Smith, who afterwards sold it to the respondent, his wife. On July 23, 1874, Wood was discharged in bankruptcy; but it seems that both of the judgments above described were founded on causes of action which were in existence before the adoption of the constitution (1868); and fearing that the assignment of homestead would not stand as against these judgments, the said Wood, before his discharge, paid to A. L. Moore $125[1] for his judgment, and took an assignment of it from him in the following words: "For value received, I hereby assign to B. T. Wood the above judgment, without recourse on me. (Signed)   A. L. Moore, (seal.)" And on March 19, 1887, the following paper was signed and delivered to Mrs. E. J. Smith : "For value received, I hereby assign to Elmira J. Smith the above judgment, without recourse on me. (Signed)   B. T. Wood, (seal.)"

In 1886, T. E. Moore, the owner of the judgment of Fowler, Foster & Co., had it renewed by order of court.

In August, 1887, the land was sold by the sheriff under Fowler, Foster & Co.'s (plaintiffs') judgment, and was bid off by respondent, Mrs. Smith, for $705. Respondent refused to pay her bid, claiming that her judgment (the A. L. Moore judment) was still alive, and as it was the older judgment, she was entitled to credit the purchase money thereon. This proceeding was then begun by rule on the sheriff, and Mrs. Smith was made a party. She was made a party defendant, and the referee, to whom all issues were referred, found that the judgment claimed by respondent had been paid, and that the plaintiffs were entitled to have the purchase money paid in by Mrs. Smith and applied to their judgment. On exceptions filed, Judge Kershaw overruled this report and dismissed the proceeding.

From this decree the appeal comes to this court upon the following exceptions: "I. In not holding that the judgment now claimed by the defendant, Mrs. Smith, has been paid by lapse of time. II. In holding that B. F. Wood, under advice, bought the oldest judgment against himself from Dr. A. L. Moore, with a view to protect the title to his homestead, and in not holding, if there was any evidence at all tending to show such purpose

---

[1] This was one-tenth of the amount then due.—REPORTER.

and such advice, that same was incompetent and should not have been considered.  III.  In holding that plaintiff's judgment never had lien on the land sold by the sheriff, except in subordination to the judgment now claimed by Mrs. Smith, the defendant.  IV. In holding that the original judgment debtor, B. T. Wood, had the right to purchase and keep open against himself, to the prejudice of his junior judgment creditors. the Moore judgment, and in holding further, that such conduct did not injure said junior judgment creditor.  V. In not holding that the moment the money was paid to A. L. Moore for said judgment, and the same was assigned to Wood, it was paid by operation of law, and never afterwards constituted a lien on said land.  VI.  In not holding that from the time of such so-called assignment in 1874, up to March, 1887, the said judgment was not kept open by Wood, but was intended to be and was paid and satisfied, and the pretended assignment of it in 1887 could not revive its lien.  VII. In not sustaining the report of the referee and overruling the defendant's exceptions thereto."

The assignment of the homestead, as against the judgment rendered on debts older than the Constitution of 1868, was absolutely void.  *Douglass* v. *Craig,* 13 S. C., 371.  The land was left still as the property of the judgment debtor, and before he was discharged in bankruptcy he paid $125 for the judgment, took an assignment of it to himself, and afterwards transferred it to Mrs. Smith, the respondent.  Was not the judgment thereby paid and discharged as a lien upon the land?  We cannot think that the facts as stated make out a case for the application of the doctrine of technical merger, and depending upon the actual or implied intention of the parties.  The owner of the land liable to the judgment was himself the primary debtor, and liable personally for the debt.  A judgment is not a mere security, but something more.  Its very purpose is to enforce payment from the defendant in execution, and when he pays the money, that is the end of the law; the transaction is payment *eo instanti*, and not merely purchase for future use against himself.  The end in view has been accomplished, and the process is *"functus officio."*

"The owner of the fee subject to a charge, who is himself the principal and primary debtor, and is liable personally and prima-

rily for the debt secured, cannot pay off the charge, and in any manner or by any form of transfer keep it alive. Payment by such a person and under such circumstances necessarily amount to a discharge. The encumbrance cannot be prevented from merging by an assignment taken directly to the owner himself, or to a third person as trustee. This rule applies especially to a mortgagor who continues to be the primary and principal debtor. The rule also applies to a grantee of the mortgagor, who takes a conveyance of the land subject to the mortgage, and expressly assumes and promises to pay it as a part of the consideration. He is thereby made the principal debtor, and the land is the primary fund for payment. If he pays off the mortgage, it is extinguished." 2 *Pom. Eq. Jur.*, section 797 and authorities. "The assignment to one of his own debt is an absurdity." *Sherwood* v. *Collier*, 29 Am. Dec., 264; *Freem. Judg.*, 39.

But it is earnestly urged that Wood, at the time he paid for the judgment and took the assignment to himself, was not the primary debtor and personally liable for the judgment, for the reason that he had been discharged in bankruptcy, and that had relieved him from the legal liability to pay the judgment, and therefore he was not the debtor, but had acquired the right to purchase and hold a judgment against his own property, precisely as any stranger might do. We do not so understand the facts of the case. It appears that Moore assigned his judgment to B. T. Wood, the defendant, on July 8, 1874, and that he was not discharged in bankruptcy until July 23rd, 1874, so that there is no foundation for the view suggested. But if the facts were as claimed, we could not accept the conclusion insisted on. The land was not administered in bankruptcy, and must have still remained the property of Wood, the debtor. If not, to whom did it belong? Certainly not to the assignee in bankruptcy. Wood paid for a judgment against himself, and if his discharge in bankruptcy relieved him from the legal liability to pay the judgment of the plaintiff, it was certainly not paid, and being a debt still, had a lien upon the land. We hardly think it can be said that he had ceased in any sense to be the debtor. *Wilson* v. *Kelly*, 16 S. C., 216.

We do not think the cases cited sustain the proposition that a

judgment may be purchased by the defendant in execution and kept open for his future use in selling lands which belong to him, although he may as to the debt have been discharged in bankruptcy. The authorities referred to relate to mortgages; and while our court has held that a mortgage may be kept open by an express agreement in writing to that effect, there being an intervening encumbrance, we have not been able to find a case where a judgment paid for by the defendant in execution and merely assigned to him, was kept open for the benefit of the defendant in execution. See *Agnew* v. *Railroad Company*, 24 S. C., 18; and *Navassa Guano Co.* v. *Richardson*, 26 *Id.*, 401.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and the rule be made absolute against the sheriff; and that the case be remanded to the Circuit for such further proceedings as may be deemed necessary to carry into effect the conclusion herein announced.