[No. 17023. *En Banc.* August 30, 1922.]

WILLIAM J. LACHNER, *Respondent*, v. H. A. P. MYERS
*et al.*, *Appellants*, GODDARD & COMPANY,
INCORPORATED, *Defendant.*[1]

JUDGMENT (260, 270)—PAYMENT—SATISFACTION—OPERATION AND
EFFECT OF ASSIGNMENT. A judgment is not satisfied by payment,
where the judgment debtor furnished another unsecured creditor
the amount of the judgment with the understanding that he was
to pay the judgment creditor and take an assignment of the judg-
ment and hold it as security for his debt; and subsequent parties
may not rely on the judgment debtor's statement that the judgment
was paid, where the judgment remains unsatisfied, although the
assignment was not recorded (TOLMAN, J., dissenting).

Appeal from a judgment of the superior court for
King county, Webster, J., entered December 29, 1921,
upon findings in favor of the plaintiff, in an action to
cancel the lien of a judgment, tried to the court. Re-
versed.

*H. A. P. Myers*, for appellants.
*Flick & Paul*, for respondent.

HOVEY, J.—Defendant, Goddard & Company, a cor-
poration, in March, 1917, executed and delivered to
respondent a note for $8,000, secured by a mortgage on
certain real estate then owned by it. In August, 1917,
one Edwards recovered judgment against Goddard &
Company in the sum of $877.65, and costs, which judg-
ment became a lien upon the real estate subject to the
mortgage. In March, 1918, default having been made
in the payment of interest upon the mortgage debt, an
agreement was made between Goddard & Company and
respondent by the terms of which the former conveyed
by warranty deed to the latter the mortgaged real
estate, subject to the $8,000 mortgage and another and

[1]Reported in 208 Pac. 1095.

prior mortgage for $2,000, and covenanted and warranted against all other liens and incumbrances, respondent paying Goddard & Company $1,000 in cash as a part of the transaction. The deed was dated March 25, 1918, and was filed for record at the request of the grantee on April 2, 1918.

In the meantime, in December, 1917, Goddard & Company, being indebted to appellant Myers, who was its attorney, for services rendered in about the sum of $400, advised with him as to how it could be protected against efforts to enforce the Edwards judgment. It was then able to pay that judgment, but was unable to pay both the judgment and the amount due to appellant. Appellant was unwilling to have Goddard & Company use all of its available funds to pay the judgment, leaving his claim unsatisfied, and upon his so stating, it was agreed that Goddard & Company should pay appellant $95 on account and furnish to him in addition thereto the amount then due on the Edwards judgment, with the understanding that he should pay over the money so furnished to Edwards or his attorney and should take from Edwards an assignment of the judgment to himself, which he should hold as security for the balance due him. This was done, and an assignment of the judgment to appellant, executed by Edwards, was taken, dated December 12, 1917, which assignment was not filed or in any way made a matter of record until May 1, 1918. On January 10, 1918, appellant, relying upon the assignment of the judgment as security therefor, advanced to Goddard & Company an additional sum of $311 in cash, and now claims an actual investment in the Edwards judgment of upwards of $600, besides interest.

At the time respondent agreed to purchase the real estate from Goddard & Company, an abstract of title

was furnished which showed the Edwards judgment in full force and unsatisfied, but of course did not show that it had been assigned. The abstract was examined for the respondent by the attorney who had been the attorney for Edwards in procuring the judgment. He testified that he forgot, for the time being, the execution of the assignment, although he had witnessed Edwards' signature thereto, and being informed by Goddard & Company that the judgment had been paid and that a release and satisfaction of record could and would be procured, he so certified in his written opinion upon the title, whereupon the deed was accepted and the cash consideration paid.

The judgment not having been satisfied of record, respondent brought this action, seeking a cancellation of the lien of the judgment upon the land conveyed to him. From a decree perpetually enjoining each of the defendants from claiming any right, title or interest in the real estate mentioned by reason of the Edwards judgment and its assignment, Myers and wife have appealed.

Respondent relies upon the rule that the payment of a judgment by one primarily liable will extinguish it, and this seems to be the general rule if the judgment debtor and judgment creditor are the only parties to the transaction. On the other hand, the law gives to the acts of people the result which they intend, unless there is some legal reason forbidding it. It is not claimed in this case that any payment was intended, but, on the contrary, the parties intended to continue the lien of the judgment as security for a *bona fide* debt. No fraud was intended nor effected.

It is stated in 17 Am. & Eng. Ency. Law (2d ed.), 862:

"In the absence of any statute to the contrary, the payment of a judgment by one primarily liable to pay the same is an absolute satisfaction, and the assignment of the judgment to him, or to another for him, will not prevent its extinction."

When the cases cited are examined it will appear that the first part of this paragraph is modified by its latter portion. The judgment debtor will not be allowed to keep a judgment alive solely for his own benefit, but where the assignment is made for the benefit of a third person a different situation is presented, and the cases cited do not cover the latter situation; many of them are cases where one is seeking to do an illegal thing, such as an attempt by one joint tort feasor to keep the judgment alive for the purpose of enforcing it against the others, or for the purpose of defrauding creditors. In no case cited was the assignment held ineffective where the assignee had any actual interest in the judgment assigned and was not himself responsible for the debt.

In 17 Am. & Eng. Ency. Law (2d ed.), 862 is also cited *Peirce v. Black,* 105 Pa. St. 342, where a judgment was enforced after it had been once paid and a satisfaction handed to the judgment debtor which the latter retained for a time, saying that he might wish more money, and subsequently returning the satisfaction to the judgment creditor received an advance of $200. The present case is of simpler solution, for no satisfaction of the judgment was ever intended. The rights of no third person were involved at the time, and when others came subsequently to deal with the property, the unsatisfied judgment stood of record. If the satisfaction of the judgment had been obtained from the then record owners and without knowledge of the assignment a different question would be presented.

The distinction is recognized in Black on Judgments (2d ed.), § 991, where it is stated:

"If a debtor pays his judgment-creditor a sum equal to the amount of the judgment, and thereupon causes the judgment to be assigned as a payment to another of his creditors, the transaction does not discharge the judgment, but the same continues valid in the hands of the assignee."

To the same effect is *Patterson v. Clark,* 96 Ga. 494, 23 S. E. 496.

The judgment is reversed, with directions to dismiss the action without prejudice to the rights of respondent as to any rights which he may still have by virtue of the mortgage formerly held by him upon the premises.

Holcomb, Fullerton, Main, Bridges, and Mackintosh, JJ., concur.

Tolman, J. (dissenting)—I am unable to concur in the views of the majority. As is said, the general rule is that, "the payment of a judgment by one primarily liable will extinguish the debt," and, in my opinion, the majority errs in holding that the intention of the parties, as such, can defeat this rule. On the contrary, except there be an equitable right of subrogation, the intention of the parties cannot defeat the legal effect of the payment. While some of the following authorities, because of divergent facts, may, on hasty consideration, be said not to be in point, yet all support the view that the intention of the parties, of itself, is not a governing factor, and the rule must be applied notwithstanding the contrary intention. *Lagrange v. Greer-Wilkinson Lumber Co.,* 59 Ind. App. 488; *Lillie v. Dennert,* 232 Fed. 104; *Ebel v. Stringer,* 73 Neb. 249, 102 N. W. 466; *Shaw v. Clark,* 6 Vt. 507, 27 Am. Dec. 578; *Fowler v. Wood,* 31 S. C. 398, 10 S. E.

93, 5 L. R. A. 721; *Vermont Loan & Trust Co. v. Mc-Gregor*, 6 Idaho 134, 53 Pac. 399; *White v. Brown,* 29 N. J. L. 307; *Henry & Coatsworth Co. v. Halter,* 58 Neb. 685, 79 N. W. 616; *Donk Bros. & Co. v. St. Louis Glucose and Grape Sugar Co.,* 17 Ill. App. 369; *Klippel v. Shields,* 90 Ind. 81; *Zimmerman v. Gaumer,* 152 Ind. 552, 53 N. E. 829; 17 Am. & Eng. Ency. Law (2d ed.), 862.

The section of Black on Judgments referred to by the majority reads:

"It is a general rule that a judgment once fully paid, and thereby satisfied and extinguished, cannot be kept alive by the agreement of the parties, to stand as a security for other liabilities or for future advances. But in Pennsylvania it is said that 'actual payment discharges a judgment at law, but not in equity, if justice require the parties in interest to be restrained from alleging it, or insisting on their legal rights.' And in that state, and some others, it is held that the parties to a judgment (no rights of third persons being involved) may agree to change the purposes for which the judgment is to be held as security, e. g., that when the judgment-debt is paid in full, it shall not be satisfied, but shall remain as security for another loan. No one but a lien-creditor whose rights would be affected can complain of such an agreement. If a debtor pays his judgment-creditor a sum equal to the amount of the judgment, and thereupon causes the judgment to be assigned as a payment to another of his creditors, the transaction does not discharge the judgment, but the same continues valid in the hands of the assignee. An entry upon the record of payment of the debt and interest, does not satisfy the judgment so far as to prevent further proceedings for the collection of costs." Black on Judgments (2d ed.), § 991, p. 1464.

This, when read as a whole, presents a very different view from that adopted by the majority. Moreover, that portion of the section quoted by the majority is based alone upon the authority of *Howk v. Kimball,*

2 Blackf. (Ind.) 309, decided in 1830. A careful read-
ing of that case will show that it does not support the
text in any material degree. There the judgment
creditor sold real estate on execution, thereby satisfy-
ing the judgment in part. The judgment debtor, still
having the right of redemption after the sale, deeded
that right to the judgment creditor (the purchaser),
who thereupon paid him $100 in money and assigned
the unsatisfied portion of the judgment to another
creditor of the judgment debtor. The court there held
that the transaction was equivalent to the payment to
the redemptioner of $150 for his right of redemption,
the payment of $50 by him to his other creditor in sat-
isfaction of his claim, and the purchase of the judg-
ment by such other creditor with the $50 so paid.
Rather unsound reasoning, as the court seems to have
felt, for it sought to bolster up its decision with other
reasons which we have not the space here to enumerate,
and which lend even less support to the views of the
majority. Mr. Black cites as contrary to his view the
following: *Henry & Coatsworth Co. v. Halter, supra,*
and *First National Bank of Plattsmouth v. Gibson,* 60
Neb. 767, 84 N. W. 259, which are modern cases and
stronger authorities.

Except as herein noted, the writer, by an extended
search, has been unable to find any authority holding
to the contrary of the general rule, except that cases
are not wanting which hold that the life and lien of a
judgment or other incumbrance may, if that be the
intention of the parties, be preserved by an assignment
in favor of a creditor of the judgment debtor who in
equity is entitled to subrogation. *Lagrange v. Greer-
Wilkinson Lumber Co., supra; Boice v. Conover,* 69
N. J. Eq. 580, 61 Atl. 159; *Graff's Estate,* 139 Pa. St.

69, 21 Atl. 233; *Flagg v. Kirk,* 20 D. C. (9 Mackey) 335; *Carter v. Sheriff of Halifax,* 8 N. C. 483.

*Howk v. Kimball, supra,* should not be permitted to prevail over these authorities, and, in fact, can no longer be considered as an authority even in Indiana, as the Indiana court seems to have held to the doctrine here contended for in *Lagrange v. Greer-Wilkinson Lumber Co., supra.*

Even the case of *Peirce v. Black,* 105 Pa. St. 342, which the majority cites and upon which it relies, specifically recognizes that no such assignment will be permitted to stand if the rights of a lien creditor are thereby affected. Moreover, that case, instead of being an authority for the majority, is a strong authority in favor of the doctrine for which the writer now contends. In that case the judgment debtor borrowed money with which to pay the judgment. One Clark was security for the judgment debtor in obtaining the loan for that purpose, and the judgment was assigned to Clark to indemnify him as such surety. Therefore he had an equitable right of subrogation, and we might rest this dissent upon that case alone. In any event, the respondent here is more than a lien creditor. He is a purchaser for value and his rights are assuredly affected by the assignment, if it stands, and therefore *Peirce v. Black, supra,* in no way supports the view of the majority.

In my opinion, it only remains to inquire whether appellants had a right of subrogation which equity will recognize. There is nothing in the record to so indicate. Appellant was a mere contract creditor at and before the time of the taking of the assignment. He had no lien or other security for his claim, and because of having no judgment, he had no legal means of preventing his debtor from paying the judgment to the

exclusion of any payment to himself, and no means to compel payment to himself. By the payment which was made to the judgment creditor he was deprived of no right, and of no security for his debt, and therefore had no right of subrogation which equity will recognize and enforce as to his original claim, and of course none whatever as to the advances made after the judgment was in law satisfied. If the reversal of the judgment meant that appellants would receive their money, the writer would be inclined to go as far as the law will permit to protect them, but since at best, with a reversal of the judgment, they secure only the right to defend against the foreclosure of the prior mortgages, and to redeem, if such defense be unsuccessful, it does not appear that there is anything in the case which warrants us in departing from the general and settled rule which is prevalent throughout the land. The question is not one which frequently arises, but the law should be settled and uniform. Under the great weight of authority, the judgment should be affirmed.