[No. 18403.   Department One.   April 3, 1924.]

NORTH PACIFIC MORTGAGE COMPANY, *Appellant*, v. MARY KREWSON *et al.*, *Respondents*.[1]

BILLS AND NOTES (88)—RELEASE OF JOINT MAKER—DISCHARGE OF DEBT—STATUTES. The release of three of six joint and several makers of a promissory note, on receipt of a proportionate amount, "in full payment," of their share of the note is not a "renunciation" within Rem. Comp. Stat., § 3512, relating to the unconditional renunciation of the maker's rights against the principal debtor; since there was no release of the "principal debtor."

SAME (88). Under Rem. Comp. Stat., § 3509, subd. 4, providing that a negotiable instrument is discharged by any other act which will discharge a simple contract for the payment of money, a release of three of six joint and several makers of a promissory note, on receipt of a proportionate amount, "in full payment" of their share of the note, operates to discharge the other makers, although there is no right of contribution between them.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered June 27, 1923, in favor of the defendants, in an action on a promissory note, tried to the court. Affirmed.

[1]Reported in 224 Pac. 566.

*A. D. McLaren,* for appellant.

*Davis, Heil & Davis,* for respondents.

MACKINTOSH, J.—In October, 1909, six brothers and sisters, whom we will call A, B, C, D, E and F, were all tenants in common of a certain piece of property, and in that month signed a joint and several note for $1,500, payable to the appellant, and executed a mortgage on the property to secure the payment of the note. On October 11, 1921, the appellant accepted $250 each from A, B and C, and gave to each of them a receipt which read as follows: "Received from A two hundred and fifty and no/100 dollars, applied as follows: In full payment of her share of a $1,500 dollar note and mortage, signed by her on October 11, 1909. . . . $250. Total $250.00. North Pacific Mortgage Company, per A. Vanderspeck." The balance of the note remaining unpaid, this action was begun against D, E and F to recover the $750 remaining and to foreclose the mortgage on the interests of the defendants, D, E and F. The trial court held that the appellant had no cause of action, by reason of its acceptance of the payment of $250 each from A, B and C, and the delivery to each of them of a receipt. The mortgage company has appealed.

One point relied upon by the respondents is that, under § 3512, Rem. Comp. Stat. [P. C. § 4193] which reads as follows:

"The holder may expressly renounce his rights against any party to the instrument, before, at, or after its maturity. An absolute and unconditional renunciation of his rights against the principal debtor made at or after the maturity of the instrument discharges the instrument. But a renunciation does not affect the rights of a holder in due course without notice. A renunciation must be in writing, unless the

instrument is delivered up to the person primarily liable thereon,''

the respondents have been discharged. The ''renunciation'' referred to in § 3512 has been interpreted by this court as meaning ''release.'' *Baldwin v. Daly*, 41 Wash. 416, 83 Pac. 724. To our mind, this section does not refer to the situation existing in this case, for here there was no release of the ''principal debtor'' referred to in that section, and a large part of the discussion in the briefs, referring to this subject, may be disposed of without further comment, except that it may be as well to refer here to the case of *Davis v. Gutheil*, 87 Wash. 596, 152 Pac. 14, which was one considering § 3512, the question there being whether the release of one of two joint makers would have the effect of releasing a party secondarily liable on the obligation, and a question which is not before us here. The real question in this case is as to the legal effect of the release of one maker of the note upon which there are joint and several makers.

The writing given to A, B and C was a release and it had the effect of preventing any action against either of them by the appellant, and would release from the lien of the appellant's note and mortgage each of the one-sixth undivided interests of A, B and C in the mortgaged premises.

The section of the negotiable instruments act which applies to this question is § 3509, Rem. Comp. Stat. [P. C. § 4190], subdivision 4, reading as follows:

''A negotiable instrument is discharged. . . . (4) By any other act which will discharge a simple contract for the payment of money.''

This section is but a statutory enactment of the law merchant and the common law. It does not undertake to define what constitutes a release of a simple con-

tract, but leaves that to be decided by what was the rule under the law merchant and the common law, and what was said in this regard by the supreme court of Colorado, in the case of *Owens v. Greenlee,* 68 Colo. 114, 188 Pac. 721, 9 A. L. R. 1184, where the common law and the law merchant have not been modified by statute, is applicable:

"The whole purpose of the law merchant prior to the adoption of the uniform negotiable instruments act was to make bills of exchange and checks when put into circulation to that extent take the place of money. The rules by statutes and decisions were so adopted for the protection of the purchaser for value in due course and the makers and endorsers in relation to third persons. That act simply endeavors to codify these rules and to adopt what seemed to be the best and most uniform for given cases. Neither the law merchant nor the negotiable instruments act attempted or attempts to prescribe or determine the rights of joint endorsers or joint makers as between themselves. These rights are left to be settled according to the principles of the common law, and the equity between the parties."

Recourse, therefore, becomes necessary to the decisions to determine what the general rule is which has been adopted by the various courts interpreting the law merchant and the common law.

Turning first to the text-books, we find the rule laid down in 2 Daniels, Negotiable Instruments (4th ed.), page 318, as follows:

"Now, when the maker of a joint note, or a joint acceptor, or joint indorser, is discharged by a release or otherwise, all others jointly bound with him are discharged. . ."

Story, Bills and Notes, § 425, says:

"A release of one joint maker, or indorser, by the holder, whether they are accommodation parties or not, will discharge all the joint parties; for such a release is a complete bar to any joint suit, and no separate suit

can be maintained in such a case. In short, when the debt is extinguished as to one, it discharges all, whether the parties intended it or not.''

Chitty, Bills (11th American edition from the 9th London edition), page 313, states:

"In general a *release* of one of several joint and several debtors or parties to a bill or note operates as a release of the whole, for the debt is thereby in law discharged. . .''

Crawford, the draughtsman of the negotiable instruments act adopted by the various states, says in his Annotated Negotiable Instruments Act, page 195, referring to subdivision 4, § 3509, *supra,* that "the release of one joint maker will operate to discharge the others.''

To the same effect see Byles on Bills (8th ed.), 243; Edwards on Bills, § 780.

Chief Justice Lord Denham, in 1836, in the case of *Nicholson v. Revill,* 4 Ad. & El. 675, discusses the matter in this language:

"We give our judgment merely on the principle laid down by Lord Chief Justice Eyre in Cheetham v. Ward. . . as sanctioned by unquestionable authority, that the debtee's discharge of one joint and several debtor is a discharge of all. . . This view cannot perhaps be made entirely consistent with all that is said by Lord Eldon in the case Ex parte Gifford. . . where his lordship dismissed a petition to expunge the proof of a surety against the estate of a co-surety. But the principle to which we have adverted was not presented to his mind in its simple form, and the point certainly did not undergo much consideration. For some of the expressions employed would seem to lay it down that a joint debtee might release one of his debtors, and yet, by using some language of reservation in the agreement between himself and such debtor, keep his remedy entire against the others, even without consulting them. If Lord Eldon used any language which could be so

interpreted, we must conclude that he either did not guard himself so cautiously as he intended, or that he did not lend that degree of attention to the legal doctrine connected with the case before him, which he was accustomed to afford. We do not find that any other authority clashes with our present judgment. . ."

See, also, *Harrison v. Close*, 2 Johns. (N. Y.) 448; *Robertson v. Smith*, 18 Johns. (N. Y.) 459; *Boardman v. Paige*, 11 N. H. 431; *Goodnow v. Smith*, 18 Pick. (Mass.) 414; *Case Threshing Machine Co. v. Bridger*, 133 La. 754, 63 South. 319; *Crawford v. Roberts*, 8 Ore. 324; *Heckman v. Manning*, 4 Colo. 543; *Tuckerman v. Newhall*, 17 Mass. 580; *Benjamin v. McConnell*, 4 Gilm. (Ill.) 545. All these cases refer to negotiable instruments.

The general rule is the same relating to contracts in general, as stated by Parsons, Contracts (9th ed.), 24; *Lamb v. Gregory*, 12 Neb. 506, 11 N. W. 755; and the decision of this court in *Brodek v. Farnum*, 11 Wash. 565, 40 Pac. 189.

In partnership relations the same rule has been stated by Story in his work on Partnership (7th ed.), § 155, where he said:

". . . if the creditor should receive the separate security of each partner for his own share of the debt, in satisfaction thereof, all joint liability of the partnership for the debt would henceforth be gone. . ."

Also to joint bondsmen. *Munyan v. French*, 60 N. J. L. 12, 36 Atl. 771; *Crane v. Alling*, 15 N. J. L. 423. Broome's Legal Maxims (5th ed.), 703 says: ". . . the debtee's discharge of one joint or joint and several debtor is a discharge of all, . . ."

Of interest, but not of binding force here, is the decision of this court in *Insley v. Webb*, 122 Wash. 98, 209 Pac. 1093, relating to the discharge of one jointly liable for a deficiency judgment, and the decisions in

*Abb v. Northern Pacific R. Co.,* 28 Wash. 428, 68 Pac. 954, 92 Am. St. 864, 58 L. R. A. 293; *Randall v. Gerrick,* 93 Wash. 522, 161 Pac. 357, L. R. A. 1918D 179; *Larson v. Anderson,* 108 Wash. 157, 182 Pac. 957, 6 A. L. R. 621; *Betcher v. Kunz,* 112 Wash. 563, 192 Pac. 955, and *Sunset Copper Co. v. Zickrick,* 125 Wash. 565, 217 Pac. 5, relating to the release of tort-feasors jointly and severally liable. In the case of *Davis v. Gutheil, supra,* where Clericus and Byrne were the joint makers of a note secured by a mortgage upon two lots which they jointly owned, and which after the maturity of the note had been divided by each of the makers taking a lot, and where they had agreed between them that Clericus might pay one-half the amount of the note and have her lot released from the mortgage and that Byrne would still remain liable upon her one-half of the debt, this court said:

"The discharge of Emily Clericus upon her payment of half the debt would therefore operate as a discharge of her co-maker, Katherine Byrne."

So we may take it that § 3509, subd. 4, Rem. Comp. Stat. [P. C. § 4190], means that the release of one of joint and several makers of a promissory note will release all the others.

This rule may be strict, but we can join with the supreme court of Nebraska in saying:

"It is with great reluctance that we affirm a judgment which will release these defendants from a just obligation which some of them ought to pay. Common prudence, it seems to us, would have dictated to plaintiff's agents the necessity of their making inquiry of Britt and McKinney before they release Silvers. If they saw fit to refrain from making such inquiry when they had ample time to do so, and plaintiff must now suffer a loss on account thereof, the loss must be charged to their own gross neglect, and not to the well-established rule of law which prevents a recovery in

this case." *Huber Mfg. Co. v. Silvers,* 85 Neb. 760, 124 N. W. 148.

A very attractive argument is made, based upon the theory of accord and satisfaction, and upon the right of subrogation and contribution, but to indulge in a discussion of these subjects, however attractive, would be to digress into by-paths leading to no correct destination. It may be true, as the appellant alleges, that the respondents D, E and F, as a matter of fact, have lost no right of contribution against A, B and C, and that there is no need for their being subrogated to any rights of the appellant, but these are matters which cannot be determined now, and the law has been firmly settled, as we have already seen, that the release operated to destroy all the rights which the appellant may have had against D, E and F, although D, E and F may have lost no rights themselves.

The judgment is affirmed.

MAIN, C. J., HOLCOMB, TOLMAN, and PARKER, JJ., concur.