[No. 25706. Department Two. January 7, 1936.]

NORTH PACIFIC PUBLIC SERVICE COMPANY, *Respondent,* v. GUY H. CLARK, *as Receiver, Appellant.*[1]

*Henderson & McBee,* for appellant.
*Williamson, Freeman & Broenkow,* for respondent.

[1] Reported in 52 P. (2d) 1255.

MAIN, J.—The plaintiff brought this action to quiet title to certain timber land. The defendant denied the claimed right of the plaintiff and, by cross-complaint, sought to have the title to the property quieted in himself as receiver of the Montborne Lumber Company. The trial was to the court without a jury and resulted in a judgment denying the claim of the defendant and sustaining that of the plaintiff, from which the defendant appealed.

The Montborne Lumber Company is a corporation organized under the laws of this state, with its principal place of business in Mount Vernon, Skagit county, and it was engaged in the logging business. A. D. Daniels, a resident of the state of Wisconsin, and Thomas Smith, a resident of Skagit county, were officers of the corporation and the principal stockholders. The North Pacific Public Service Company is a Washington corporation, with its principal place of business in the city of Tacoma.

January 13, 1930, the respondent, being then the owner of certain timber land in Skagit county, entered into a contract to sell the same to the Montborne Lumber Company, Thomas Smith and A. D. Daniels. The purchase price was $64,500, and at the time of the execution of the contract ten thousand dollars was paid. The balance was to be paid as stumpage, as the logging operations progressed. The contract provided that the purchasers bound themselves and their successors and assigns "jointly and severally."

Subsequently, the corporation became insolvent, and receivers were appointed and after a time resigned, and the present appellant, Guy H. Clark, was appointed as receiver. A. D. Daniels died May 7, 1931, and his will was admitted to probate in Oneida county, Wisconsin, and ancillary administration with the will annexed was had in this state.

July 23, 1931, a claim was filed against Daniels in the sum of $58,563.87, together with interest, which would be the amount of the balance due upon the contract November 1, 1932. At the time the claim was filed, there had been no default, and there was no unpaid balance due on the contract. June 14, 1932, the respondent settled with Thomas Smith and the executor of the last will of Daniels and his heirs, and took an assignment from each of them, together with a quitclaim deed conveying all of their interests to the property and in the contract. At this time, the Daniels estate paid the sum of ten thousand dollars for this adjustment.

The assignments mentioned contained the express provision that the release of Smith and the Daniels estate should not in any wise operate to discharge the Montborne Lumber Company from any of its liabilities or obligations under the contract and expressly reserved to the respondent all of its rights against that corporation. After the final payment on the contract had become due, the respondent tendered a deed to the receiver and demanded payment, which was refused. Thereafter, this action was brought seeking a forfeiture of the contract for noncompliance with its terms.

The first question is whether the release of Smith and the executor of Daniels and his heirs operated to release the Montborne Lumber Company, the other obligor on the contract. The general rule is that a release by a creditor of one of several persons who are jointly or jointly and severally obligated is to discharge them all. But that rule is not applicable where, in the release, there is an express reservation of rights against the co-obligor or co-obligors. In Restatement of the Law of Contracts, American Law Institute, Contracts, § 122, p. 142, it is said:

"Written or oral words of a person entitled to enforce a promise which purport to discharge the promisor but expressly to reserve rights against other promisors jointly bound for the same performance do not operate as a discharge of the promisor but only as a promise not to sue him, . . . ."

In 23 R. C. L. 404, it is said:

"While, as stated in the preceding paragraph, the strict common law rule is that if two persons are bound jointly and severally in an obligation, and the obligee voluntarily and unconditionally releases one of them, both are discharged, and either may plead the release in bar, nevertheless the rule deducible from all the authorities is that equity always gives to a release operation according to the intention of the parties and the justice of the case, and although many early cases may be cited to the effect that the rule applied by courts of law was otherwise, and that a saving clause repugnant to the nature of the grant was void, and that the grant remained absolute and unqualified, such is not the modern rule of construction. The equitable rule now prevails, and a release is to be construed according to the intent of the parties and the object and purpose of the instrument, and that intent will control and limit its operation. Hence the legal operation of a release of one of two or more joint debtors may be restrained by an express provision in the instrument that it shall not operate as to the other."

In *Shriver v. Carlin & Fulton Co.*, 155 Md. 51, 141 Atl. 434, 58 A. L. R. 767, after a thorough review of the authorities, English and American, it was said that the "great weight of modern authority" supports the rule as stated in the two texts mentioned above.

The cases, Federal and state, which support the modern rule will be found assembled in a note in 53 A. L. R. 1455.

This court, though the decision was not rested principally upon that ground, in the case of *Davis v.*

*Gutheil,* 87 Wash. 596, 152 Pac. 14, practically adopted the modern rule. It was there said:

"A release of the maker of a promissory note without the consent of the indorser operates to release the indorser. But it is held otherwise if the instrument by which the maker is released expressly reserves the remedy of the holder of the note against the indorser. *Tobey v. Ellis,* 114 Mass. 120. And a covenant not to sue the maker, reserving all rights against the other parties, has been held not to release the indorser. [Citing authorities.]"

In this case, as above stated, there was an express reservation to the effect that the Montborne Lumber Company's obligation should not be affected by the release of Smith and the executor of the last will and testament of Daniels.

Attention has been called to the fact that, in this state, the release of one joint tort feasor, even with the reservation that it is not to be considered as a release against any other of the joint tort feasors, operates as a release of all. There is a reason in tort cases why that should be the rule, which does not exist in the present case. In the case of tort, there is no fixed standard of liability, and the right of a tort feasor, not released, to enforce contribution against the one released would be difficult and impractical. But that is not the case where there is a standard of liability which may be sustained by proof.

In the cases of *Sunset Copper Co. v. Zickrick,* 125 Wash. 565, 217 Pac. 5, and *Pinkham Lumber Co. v. Woodland State Bank,* 156 Wash. 117, 286 Pac. 95, the rule of the release of one released all was applied in fraud transactions. To hold that the present case falls under the holdings in those cases, would be to extend the doctrine and go counter to the weight and trend of modern authority as well as the better reason, and this, we think, should not be done.

■ The other question presented is whether the filing of the claim was an election to rely upon the personal responsibility of the obligors and thus waive the right of forfeiture which was contained in the contract. The doctrine of election of remedies has no application when the relief sought is not available. The remedy is not available when there is a good defense to it. *Babcock, Cornish & Co. v. Urquhart,* 53 Wash. 168, 101 Pac. 713; *Morton Organ Co. v. Armour,* 173 Wash. 462, 23 P. (2d) 887, 27 P. (2d) 887.

When the claim in this case was filed, nothing was due on the contract, and nothing would become due for months afterwards. The personal liability was then contingent upon whether the contract should be carried out according to its terms. It was necessary, within the time provided for the filing of claims, for the respondent to present a claim or forfeit his rights to hold the makers of the contract on their personal liability. At the time the claim was filed, it could not work an election because, there being nothing due on the contract at that time, there was a good defense to it.

The appellant's contention in this regard is "based squarely upon the case" of *Kimble Motor Car Co. v. Androw,* 125 Wash. 225, 215 Pac. 340, as stated in his brief. But that case is different. There, at the time the claim was presented against the estate of the deceased, the vendee, the payments upon the contract were in default. There, at the time the claim was filed, two remedies were open to the claimant, and by the filing of the claim he elected to pursue that one. Here, as already indicated, when the claim was filed, that remedy was not available, and the liability at that time was only contingent.

The judgment will be affirmed.

TOLMAN, HOLCOMB, BEALS, and BLAKE, JJ., concur.