[No. 27598.   Department Two.   November 27, 1939.]

ANNA L. JOHNSON, *Respondent,* v. CLAUDE E. STEWART
*et al., Appellants.*[1]

[1]Reported in 96 P. (2d) 473.

*D. S. Evans* and *LeRoy McCann,* for appellants.

*J. C. Bolinger,* for respondent.

BEALS, J.—December 5, 1936, Anna L. Johnson (formerly Anna L. Slack) recovered judgment upon three promissory notes, in the superior court for Chelan county, against H. B. Courtney and Marjorie D. Courtney, his wife, and Claude E. Stewart and Christa A. Stewart, his wife, for the sum of $915, together with attorney's fees and costs. The defendants were joint and several makers of the promissory notes, which were merged in the judgment, which was entered against them jointly and severally, and against the respective marital communities. March 11, 1937, there was signed and delivered an instrument in writing, entitled in the action, in words and figures as follows:

"RELEASE OF JUDGMENT AS TO PARTICULAR DEFENDANTS.

"THIS IS TO CERTIFY, That the judgment made and entered in the above entitled action on the 5th day of December, 1936, in favor of the plaintiff in said action and against the defendants therein for One Thousand Three and 80/100 Dollars ($1003.80) and duly docketed in the office of the clerk of said court, at page 172, volume 35, of Executions, is hereby satisfied as against the defendants, H. B. Courtney and Marjorie D. Courtney, his wife; and the clerk of the said superior court is hereby made, constituted and appointed her true and lawful attorney for her and in her name, place and stead, to discharge said judgment of record as against the said defendants, H. B. Courtney and Marjorie D. Courtney, his wife.

"IN TESTIMONY WHEREOF, Anna L. Johnson has hereunto set her hand and seal this 11th day of March, A. D. 1937.

"ANNA L. JOHNSON, formerly Anna
L. Slack, Plaintiff

By: J. C. BOLINGER
Attorney for Plaintiff

"STATE OF WASHINGTON⎱ ss.
　County of Chelan　⎰

"I, the undersigned, a notary public in and for said state, do hereby certify that on this 11 day of March, A. D. 1937, personally appeared before me J. C. Bolinger, to me known to be the individual described in and who executed the within instrument, and acknowledged that he signed and sealed the same as his free and voluntary act and deed, for the uses and purposes therein mentioned.

"IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

　　　　　　　　　"HARVEY F. DAVIS
　　　　"Notary Public in and for the State of
　　　　　Washington, residing at Wenatchee."

Two days later, the release was filed in the office of the clerk of the superior court for Chelan county.

June 30, 1938, the judgment debtors Claude E. and Christa A. Stewart moved for an order requiring the judgment creditor, Anna L. Johnson, to satisfy the judgment as to them, basing their motion upon the document above set forth. January 26, 1939, the trial court entered the following order, regularly entitled in the cause:

"ORDER

"This matter having been presented to the court by written briefs in accordance with the stipulation of J. C. Bolinger, attorney for the plaintiff, and D. S. Evans, attorney for the defendant, Claude E. Stewart and Christa A. Stewart, his wife, on the motion for an order setting aside the judgment entered herein, and the court having considered the briefs presented and filed by the respective counsel and being fully advised in the premises,

"IT IS HEREBY ORDERED that the motion of the defendant, Claude E. Stewart and Christa A. Stewart, his wife, for an order satisfying the judgment entered herein be and the same hereby is overruled.

"DONE IN OPEN COURT this 26 day of January, 1939.

　　　　　　　　　"W. O. PARR, Judge."

From this order, Mr. and Mrs. Stewart have appealed, assigning error upon the denial of their motion.

The case is before us upon the transcript only, no statement of facts or bill of exceptions having been filed. Certain affidavits filed on behalf of respondent are contained in the transcript, but as they are not referred to in the order entered by the trial court denying appellants' motion, and are not identified in any other manner as having been called to the attention of the trial court prior to his ruling upon appellants' motion, the affidavits cannot be considered.

In this state, it has for many years been the rule that the acceptance of a valuable consideration in satisfaction of a claim against one of several joint *tort feasors* operates to release other joint *tort feasors*. *Larson v. Anderson,* 108 Wash. 157, 182 Pac. 957, 6 A. L. R. 621; *Pinkham Lumber Co. v. Woodland State Bank,* 156 Wash. 117, 286 Pac. 95. In this case, the relation of the parties is based on contract. There is a very substantial difference between the situation presented by the release of one joint *tort feasor,* and the release of one of several joint contract debtors. Cases involving the former situation are not controlling, when questions concerning contractual relations are presented.

Appellants argue that, when a cause of action has merged in a judgment, the latter does not altogether do away with the nature of the obligation upon which the judgment was entered, and that certain characteristics of the original obligation inhere in the judgment. 15 R. C. L. 788. Appellants then cite the case of *North Pacific Mortgage Co. v. Krewson,* 129 Wash. 239, 224 Pac. 566, 53 A. L. R. 1416, in which it was held that the release of three of six joint and several makers of a promissory note operated, under Rem.

Comp. Stat., § 3509, subd. 4 (Rem. Rev. Stat., § 3509 [P. C. § 4190], subd. 4), reading as follows:

" 'A negotiable instrument is discharged . . . (4) By any other act which will discharge a simple contract for the payment of money,' "

to release the other three makers of the note, in an action subsequently brought against them. The payee of the note, when releasing the three makers thereof, gave each one a receipt, in the following language:

" 'Received from A two hundred and fifty and no/100 dollars, applied as follows: In full payment of her share of a $1,500 dollar note and mortgage, signed by her on October 11, 1909. . . . $250. Total $250.00. North Pacific Mortgage Company, per A. Vanderspeck.' "

In the recent case of *North Pacific Public Service Co. v. Clark,* 185 Wash. 132, 52 P. (2d) 1255, an action to quiet title to land, in which the defendant sought to quiet his own title thereto, it appeared that the plaintiff, as vendor, had contracted to sell to a corporation, of which the defendant was subsequently appointed receiver, and two other individuals the land in question, and that the plaintiff had subsequently settled with the two individual defendants, accepting from them a money payment and quitclaim deeds to all their interest in the property. The instrument of settlement with these two individuals contained the express provision that their release from all obligation under the contract of purchase should not in any wise operate to discharge the corporation from any of its liabilities or obligations thereunder, and expressly reserved to the plaintiff all of its rights against the corporation. This court held that the release of the individuals did not operate to release the corporation, citing from Restatement of the Law of Contracts, 142, § 122, as follows:

"Written or oral words of a person entitled to enforce a promise which purport to discharge the promisor but expressly to reserve rights against other promisors jointly bound for the same performance do not operate as a discharge of the promisor but only as a promise not to sue him, . . ."

and the following text from 23 R. C. L. 404:

"While, as stated in the preceding paragraph, the strict common law rule is that if two persons are bound jointly and severally in an obligation, and the obligee voluntarily and unconditionally releases one of them, both are discharged, and either may plead the release in bar, nevertheless the rule deducible from all the authorities is that equity always gives to a release operation according to the intention of the parties and the justice of the case, and although many early cases may be cited to the effect that the rule applied by courts of law was otherwise, and that a saving clause repugnant to the nature of the grant was void, and that the grant remained absolute and unqualified, such is not the modern rule of construction. The equitable rule now prevails, and a release is to be construed according to the intent of the parties and the object and purpose of the instrument, and that intent will control and limit its operation. Hence the legal operation of a release of one of two or more joint debtors may be restrained by an express provision in the instrument that it shall not operate as to the other."

This court cited the case of *Davis v. Gutheil,* 87 Wash. 596, 152 Pac. 14, quoting from the opinion:

"A release of the maker of a promissory note without the consent of the indorser operates to release the indorser. But it is held otherwise if the instrument by which the maker is released expressly reserves the remedy of the holder of the note against the indorser. *Tobey v. Ellis,* 114 Mass. 120. And a covenant not to sue the maker, reserving all rights against the other parties, has been held not to release the indorser. [Citing authorities.]"

In the case of *Lachner v. Myers*, 121 Wash. 172, 208 Pac. 1095, this court reversed the judgment of the superior court canceling the lien of a judgment, holding that, under the circumstances shown by the record, the intent of the parties should control. In the course of the opinion, the court said:

"Respondent relies upon the rule that the payment of a judgment by one primarily liable will extinguish it, and this seems to be the general rule if the judgment debtor and judgment creditor are the only parties to the transaction. On the other hand, the law gives to the acts of people the result which they intend, unless there is some legal reason forbidding it. It is not claimed in this case that any payment was intended, but, on the contrary, the parties intended to continue the lien of the judgment as security for a *bona fide* debt. No fraud was intended nor effected."

In considering such questions as that here presented, the strong trend of modern authority is to carry out the intention of the parties, if such intent can be determined from their acts, agreements, or documents signed, and to follow the rule that, where it clearly appears that the releasor intended to release a particular joint obligor only and to retain his rights against others, that intent will be given effect.

In 2 Freeman on Judgments (5th ed.), 2377, is found the following:

"But notwithstanding the strict common-law rule that a release of one of several joint or joint and several debtors operates as a release of all the others, which some courts are inclined to follow notwithstanding attempts by the creditor to reserve in the instrument a right to proceed further against the latter, the prevailing rule now is that this result is avoided where the release shows that it was not intended to discharge other debtors except to the extent of the payment made, if any, by the one released. In other words, such a release will be construed as a covenant or agreement not to sue rather than a technical release, leaving unim-

paired the right to pursue the other obligors until complete satisfaction has been obtained."

In 34 C. J. 700, § 1082, the rule is stated as follows:

"At common law a release given to one of several joint judgment debtors on his paying his proportionate share of the judgment or on other consideration, or under seal, releases the judgment as to all, unless the other joint debtors consent thereto or unless the creditor expressly reserves the right to enforce the judgment as to the others, although according to some authorities such a reservation is without effect. In some, but not other, jurisdictions, the foregoing rule as to the effect of the release of one joint judgment debtor is applicable where the judgment was rendered in an action sounding in tort. The release of the other joint judgment debtors also results where one of the debtors is released by operation of law, as in the case of a surety relieved from liability by an unauthorized extension of time to his principal. But in many states, either by force of statute or of the settled rulings of the courts, it is now held competent for the creditor to hold the other defendants liable on the judgment after having released one."

The document upon which appellants rely, above quoted, is entitled "Release of Judgment as to Particular Defendants," and, after describing the judgment as against all the defendants in the action, provides that the judgment "is hereby satisfied as against the defendants H. B. Courtney and Marjorie D. Courtney, his wife," and appoints the clerk of the court attorney for the judgment creditor, "to discharge said judgment of record as against the said defendants" Courtney.

If this release had expressly provided that the judgment should not be satisfied as against appellants herein, there could have been little question but that the document would be construed so as to preserve the lien of respondent's judgment against appellants. While the release contains no such express reservation,

we are of the opinion that, from the whole instrument, the intention of respondent to release only defendants Courtney, without relinquishing respondent's rights against appellants, is manifest. The document is entitled a release "as to particular defendants;" it recites that the judgment is satisfied "as against" the Courtneys; and the clerk is authorized to discharge the judgment of record "as against" the defendants named in the release. We are of the opinion that the release, while containing no express reservation of right against appellants, clearly shows respondent's intent not to release appellants, but to preserve the lien of the judgment as against them.

In the case of *Shriver v. Carlin & Fulton Co.*, 155 Md. 51, 141 Atl. 434, 58 A. L. R. 767, it appeared that the plaintiff had recovered judgment against several defendants jointly, whereupon, through his attorney, the plaintiff filed a writing:

"Please enter this case agreed and settled as to G. Howard White only, upon payment of costs by the said G. Howard White."

Plaintiff later sued out a writ of garnishment against another judgment debtor, who contended that the release of White operated to release him also. The court noted that the word *settled* was equivalent to *satisfaction,* but held that the judgment was not satisfied against the other defendant, holding that there was

". . . no reason . . . for adding, to the harsh rule of the common law, a harsh construction of the order of satisfaction. The manifest intention of the plaintiff was to release only White, but to retain the judgment against the other defendants, and there is no reason why that intent should not be given effect."

The court cited the early case of *Booth v. Campbell,* 15 Md. 569, in which the court had followed the older and stricter rule that the discharge of one of several joint judgment debtors operated to discharge them all.

In the case of *Smith v. State,* 46 Md. 617, the court of appeals of Maryland, reviewing a ruling of the circuit court overruling a motion to quash an execution and "strike out" a judgment, held that, while at law the release of one surety without the assent of his co-sureties would operate to discharge the latter, the rule in equity was different, and that the release of one surety would not release the co-sureties, unless the latter were thereby subjected to an increased risk or liability. It appeared that a judgment had been entered against the sureties on the bond of a tax collector, that the executor of one of the sureties had paid his proportionate amount of the judgment, and that the plaintiff had directed the clerk to enter the judgment satisfied as against the personal representative of the deceased defendant. The remaining defendants moved to quash an execution thereafter issued on the judgments against them, claiming that the satisfaction of the judgment as against the personal representative of one surety discharged the other judgment debtors. In the course of its opinion, the court said:

"It is difficult to imagine on what principle it can be maintained in equity, that the mere release of one surety discharges the other sureties from liability."

As to the procedure to be followed, the court said:

"In summary motions of this kind, Courts always exercise a *quasi* equitable jurisdiction, and will not therefore order an execution to be quashed if it appears upon a consideration of all the facts and circumstances of the case it would be against well settled principles of equity."

The ruling of the trial court refusing to quash the execution was affirmed.

In the case of *Pennington v. Bevering,* 9 S. W. (2d) (Tex. Civ. App.) 401, it appeared that two persons, as joint plaintiffs, had obtained a joint and several judg-

ment against three debtors. Later, the creditors, upon receipt of one thousand dollars, released one of the debtors from further liability on the judgment. One of the other judgment debtors then instituted an action against the judgment creditors, asking for a decree declaring the judgment satisfied as to him. The release of the judgment debtor is rather long, the pertinent portions thereof reading as follows:

"Whereas, Ross Corlett, . . . has offered . . . to borrow the sum of one thousand dollars and pay to the said plaintiffs in cash, in consideration of the said plaintiffs agreeing to accept said payment of one thousand dollars . . . as full, final, and complete payment and satisfaction of said judgment, in so far as the said Ross Corlett is concerned: Now, therefore, . . . we . . . do hereby release and discharge the said Ross Corlett from any and all other and further liability of every kind and nature to us by reason of said judgment . . . in so far as the said Ross Corlett or his heirs are concerned . . ."

While stating that a release of one jointly liable with another will be construed as a settlement of the entire claim, when the language of the contract of settlement can be reasonably so construed, the court said:

"We conclude that, aside from the parol evidence introduced to support the plea of contemporaneous oral agreement between the parties, the instrument by its terms fails to show that the release was a satisfaction of the judgment against appellant, as well as Ross Corlett;"

and held that the release did not operate as a satisfaction of the entire judgment.

In the case of *Schneider v. Maney*, 242 Mo. 36, 145 S. W. 823, it was held that a judgment creditor who had released several of the judgment debtors, could still enforce the judgment against a judgment debtor who had not been released. The case is not particu-

larly helpful here, as it was apparently assumed that the judgment was still operative against the unreleased debtor.

The foregoing authorities support our conclusion that the release which respondent executed does not operate as a satisfaction of the judgment as against appellants.

The doctrine that one joint contract debtor is released from all obligations by the release of his co-debtor, even though the debt is not fully paid, is rather technical, and unless the interests of the un-released debtor have somehow been prejudiced, is a principle which should not be extended. A judgment creditor may satisfy his entire demand from the property of one judgment debtor, leaving that debtor to seek contribution from his co-debtors. The doctrine upon which appellants rely certainly often gives a debtor an unconscionable advantage, without any sacrifice or effort on his part. The equities of the situation should be considered in each case.

In the case of *North Pacific Mortgage Co. v. Krewson, supra,* this court quoted from the opinion of the supreme court of Colorado, in the case of *Owens v. Greenlee,* 68 Colo. 114, 188 Pac. 721, 9 A. L. R. 1184, in which, referring to the rights of joint endorsers or joint makers as between themselves, under the law merchant or the negotiable instruments act, the court said:

"These rights are left to be settled according to the principles of the common law and the equities between the parties."

In the case cited, this court, feeling bound by the stricter rule, in holding that the other joint and several makers of the promissory note in question had been released by the release of three of the makers, said:

"This rule may be strict, but we can join with the supreme court of Nebraska in saying:

" 'It is with great reluctance that we affirm a judgment which will release these defendants from a just obligation which some of them ought to pay.' "

In the case of *North Pacific Public Service Co. v. Clark, supra,* this court, referring to the rule that the release of one joint *tort feasor,* even with a reservation, operates as a release of all, said:

"There is a reason in tort cases why that should be the rule, which does not exist in the present case. In the case of tort, there is no fixed standard of liability, and the right of a tort feasor, not released, to enforce contribution against the one released would be difficult and impractical. But that is not the case where there is a standard of liability which may be sustained by proof."

The *Krewson* case is not referred to in the *Clark* opinion, in which we distinguished the rule laid down in two of our prior cases which involved fraudulent transactions, saying:

"To hold that the present case falls under the holdings in those cases, would be to extend the doctrine and go counter to the weight and trend of modern authority as well as the better reason, and this, we think, should not be done."

As above stated, we are not unmindful of the rule laid down in 2 Freeman on Judgments, 2377, that

"Judgments do not differ materially from other joint obligations so far as concerns the effect of a release of one joint debtor on the right to pursue the others. The fact that an obligation has been reduced to judgment does not change its character and incidents in this respect;"

but at the same time, a judgment adjudicating contract rights is a more definite obligation than the contract itself, the rights of the parties having crystallized,

through judicial proceedings, into a fixed and final form.

The record in the case at bar discloses nothing as to the nature of the original obligation, *inter sese*, of the makers of the promissory notes merged in the judgment in this action. Apparently, the defendants were all primarily liable upon the notes which they signed. Hence, no question presents itself as to liabilities of makers primarily or secondarily liable.

The statute provides a method for the satisfaction of judgments (Rem. Rev. Stat., § 454 [P. C. § 8110-16]), the legislature having deemed the release of a judgment a matter of sufficient importance to call for a special enactment covering such a transaction. A written instrument filed pursuant to this statute should not ordinarily be extended beyond its express terms, unless such a construction be required by some well recognized rule of law. Certainly, the instrument here relied upon by appellants does not purport to satisfy the judgment as against appellants. This being true, the intent of the releasor should receive particular consideration, and the effect of the release should not be extended for the benefit of any third party.

It is of interest to note that, in the case of *Robertson v. Wise*, 152 Wash. 624, 279 Pac. 106, this court, in affirming an order of the superior court denying a motion to vacate a judgment, referring to a collateral question suggested on the appeal, said:

"We see no reason why a judgment creditor may not release a judgment as to one or all of the judgment debtors if he sees fit to do so."

The statement was not necessary to the decision of the case, but it is of interest in connection with the question to be here determined.

We are convinced that the release which was filed herein, by its express terms, operated only to release

the defendants Courtney from the judgment, and that the intent to limit the function of the release to this purpose clearly appears from the document itself.

When the clerk of the court followed the terms of the release and discharged the judgment as against the defendants Courtney, the judgment stood as against appellants. The addition to the release of a statement to the effect that respondent expressly preserved a judgment against appellants, would add nothing to the record as carried into effect by the clerk of the court.

We are in accord with the trend of modern authority, which tends to modify the strict common law rule by which joint contract obligors were often released from the burden of their contract by an inadvertent or ill advised release of one of their number. In connection with such questions as this, the modern rule that the intent of the parties, as expressed by their acts, and particularly by their writings, should receive a greater measure of consideration in determining contract rights, is clearly expressed in standard texts and judicial decisions. This principle tends to accomplish just and equitable results to a greater extent than did the strict rule of the common law.

The trial court did not err in denying appellants' motion, and the order appealed from is affirmed.

STEINERT, GERAGHTY, and JEFFERS, JJ., concur.

BLAKE, C. J. (dissenting)—Under the rule laid down in *North Pacific Mortgage Co. v. Krewson,* 129 Wash. 239, 224 Pac. 566, 53 A. L. R. 1416, I think the satisfaction of the judgment as against the Courtneys constituted a satisfaction of the judgment as against the defendants. The rule there invoked is but the application of the general rule that the release of one of several joint and several obligors effects a release of

454

all unless liability of the others is expressly reserved by the instrument releasing the one. *North Pacific Public Service Co. v. Clark*, 185 Wash. 132, 52 P. (2d) 1255.

I think the judgment should be reversed.

