[No. 12605. Department One. October 19, 1915.]

ANDREW J. DAVIS, *Appellant*, v. C. LOUIS GUTHEIL *et al.*, *Respondents*, KATHERINE BYRNE, *Defendant*.[1]

BILLS AND NOTES—INDORSERS—"SECONDARILY LIABLE"—STATUTES. The indorsement by the payees of a mortgage note renders them secondarily liable thereon, within Rem. & Bal. Code, § 3582, so providing as to all others than the person "primarily" liable, defined as the person who by the terms of the instrument is absolutely required to pay the same.

SAME—INDORSERS—RELEASE—"ALTERATION"—STATUTES. The release from liability of one of the solvent makers of a mortgage note, and part of the security, is not a "material alteration" of the note, within Rem. & Bal. Code, § 3514, providing that a person secondarily liable is released by such an alteration.

SAME—INDORSERS—RELEASE—"RENUNCIATION"—STATUTES. A satisfaction, release and discharge of one-half of the mortgaged debt to one of two joint makers, and of that part of the mortgage lien covering her half of the property, coupled with a reservation of all rights against others, is not an "absolute and unconditional renunciation" of all the holder's rights against all the principal debtors, as contemplated by Rem. & Bal. Code, § 3512, which provides that renunciation of rights against a principal debtor discharges the instrument.

SAME—INDORSERS—RELEASE—"NOVATION"—STATUTES. The release and discharge of one of the makers of a mortgage note, upon payment of half of the debt, and an extension of time to the other maker, is not a "novation" that would release an indorser, where the latter did not consent thereto and there was no new contract bringing in new parties.

SAME—INDORSERS—RELEASE—DISCHARGE OF MAKER. Under Rem. & Bal. Code, § 3510, subd. 3, providing that a person secondarily liable on an instrument is discharged by the discharge of a prior party, and subd. 5, providing that a person secondarily liable is discharged by the release of the principal debtor, unless the holder's right of recourse against the parties secondarily liable is expressly reserved, the release of one of the joint makers of a mortgage note, and of that part of the mortgage lien covering her half of the property, upon payment of half the debt, does not release the original payee who had sold and indorsed the note, except *pro tanto*, where the release was coupled with a reservation of the holder's right of recourse against the remaining parties liable upon the note.

[1] Reported in 152 Pac. 14.

Appeal from a judgment of the superior court for King county, Frater, J., entered December 18, 1914, upon sustaining demurrers to the complaint, dismissing, as to certain defendants, an action to foreclose a mortgage.  Reversed.

*H. D. Moore,* for appellant.
*Alfred Gfeller,* for respondents.

Holcomb, J.—Gutheil and wife owned two lots in Seattle, which they sold in one parcel to Emily Clericus and defendant Katherine Byrne, who gave their joint promissory note, secured by a mortgage on the the two lots, for $20,000 in payment of the purchase price.  Before maturity, Gutheil sold the note and mortgage to the Washington State Investment Company, and indorsed the note to the company.  After maturity, the company sold and transferred the note and mortgage to appellant.  After maturity, Emily Clericus and Katherine Byrne, each owning an undivided one-half interest in the two lots, divided their interests, each taking a lot in severalty, and it was agreed between them and appellant that Emily Clericus might pay half the amount due and have her lot released from the mortgage, and that an extension of time would be given Katherine Byrne upon her half of the debt.  Pursuant to this agreement, appellant indorsed the partial payment on the note and made a partial release of the mortgage, releasing Emily Clericus, but "expressly reserving his right of recourse against the remaining parties liable upon the said note."  Defendant Byrne defaulted in her payments, and suit was brought to foreclose the mortgage and for a deficiency judgment.  Respondents Gutheil separately appeared, demurred, and their demurrers were sustained, the cause was dismissed as to them, and judgment went against defendant Katherine Byrne by default.  From the judgment of dismissal as to the Gutheils, this appeal comes.

The sole question presented is whether, by reason of appellant's releasing the joint maker upon her paying half the

debt, he released the indorser or guarantor, Gutheil, from further liability. Gutheil's indorsement rendered him secondarily liable. Under our negotiable instruments act (Rem. & Bal. Code, § 3582, "The person 'primarily' liable on an instrument is the person who by the terms of the instrument is absolutely required to pay the same. All other parties are 'secondarily' liable."

Respondents contend, and the trial judge thought, that the liability is settled by the third subdivision of § 3510, Rem. & Bal. Code: "A person secondarily liable on the instrument is discharged.—3. By the discharge of a prior party." Appellant, to the contrary, insists that the fifth subdivision of the same section controls: "By a release of the principal debtor, *unless the holder's right of recourse against the party secondarily liable is expressly reserved*," basing his claim upon the italicized portion of the last subdivision. Respondents further assert that: (1) There has been a material alteration of the note by the release from liability of the only solvent maker thereof, and by the release of the lien on part of the real estate securing the note; citing Rem. & Bal. Code, § 3514 (P. C. 357 § 247), as to material alterations of a negotiable instrument, to sustain this contention. (2) That appellant renounced his rights against a principal debtor, which renunciation discharged the instrument, by the terms of Rem. & Bal. Code, § 3512 (P. C. 357 § 243). (3) That the agreement between appellant and Mrs. Clericus and Mrs. Byrne, for the release of the former and the extension of time to the latter, constituted a novation; citing *Scott v. Hallock*, 16 Wash. 439, 47 Pac. 968; *Frye & Bruhn v. Phillips*, 46 Wash. 190, 89 Pac. 559, 93 Pac. 668, and 29 Cyc. 1136.

Adverting to these contentions of the respective parties somewhat out of their order, the position of respondents, that there was a material alteration of the instrument in question, is untenable. An alteration occurs where there is some physical change "upon an instrument by which its meaning or

language is changed . . . without the consent of the other party to it, by an erasure, interlineation, addition, or substitution of material matter." 2 Cyc. 142. Nothing of that kind exists here.

Neither is there any support for the proposition that appellant renounced his rights in the note in favor of Mrs. Clericus, thereby discharging the instrument. He did renounce his right to further pursue her and to a portion of the security—that portion taken in severalty by her—upon her paying one-half of the debt and interest accrued. The instrument given by appellant to Mrs. Clericus was an instrument evidencing the satisfaction, release, and discharge of one-half of the original debt by and to her, and of that part of the mortgage lien covering the lot taken over by her. It was not an "absolute and unconditional renunciation" of all his rights against all the principal debtors, as contemplated by the negotiable instruments act (Rem. & Bal. Code, § 3512; P. C. 357 § 243), but only a renunciation of his rights against one of two principal debtors, coupled with a reservation of his rights against all other parties to the instrument. A written renunciation, absolutely and unconditionally renouncing the creditor's rights against a principal debtor, has the effect, of course, of discharging the person in whose favor it is given, as was held in *Baldwin v. Daly*, 41 Wash. 416, 83 Pac. 724, cited by respondents, and all others secondarily liable as to that person; and the instrument is discharged as to those persons. The question still remains, however, whether or not it discharges the instrument entirely as to the remaining parties who are either primarily or secondarily liable, or only *pro tanto*.

A release of the maker of a promissory note without the consent of the indorser operates to release the indorser. But it is held otherwise if the instrument by which the maker is released expressly reserves the remedy of the holder of the note against the indorser. *Tobey v. Ellis*, 114 Mass. 120. And a covenant not to sue the maker, reserving all rights

against the other parties, has been held not to release the indorser. *Kenworthy v. Sawyer*, 125 Mass. 28; *Faneuil Hall Nat. Bank v. Meloon*, 183 Mass. 66, 66 N. E. 410, 97 Am. St. 416.

Nor is the theory of novation tenable. A novation, as respondents state, "is the substitution by mutual agreement of one debtor or of one creditor for another whereby the old debt is extinguished. . . . It is a mode of extinguishing one obligation by another—the substitution, not of a new paper or note, but of a new obligation in lieu of the old one—the effect of which is to pay, dissolve, or otherwise discharge it." 29 Cyc. 1130, 1131. It must be the agreement of all the parties to the new contract. It must extinguish the old contract. There must be a new contractual relation. The creditor must concur in this. 29 Cyc. 1130, 1131.

It is plain that there is no novation here, for the reason that the creditor did not concur in releasing any of the parties save Mrs. Clericus; the indorsers (respondents) did not concur in that; the debt was not extinguished, but partially paid and satisfied; no new contract was made, and no new parties entered into the relation of the old ones. In the two cases decided by this court and cited by respondents, a new contractual relation was created upon the retirement of a partner from the firm and the acceptance by the creditor, in each case, of the new several promise of the remaining partner. Mrs. Clericus was not a partner, and she paid to the creditor one-half the debt and was released from payment to the creditor of the other half. This act simply discharged the debt and the instrument evidencing same, *pro tanto*, not only as to her, but as to all parties to the instrument.

The parties here are, therefore, to be confined to a construction of subds. 3 and 5, § 3510, Rem. & Bal. Code (P. C. 357 § 239). Katherine Byrne, one of the principal debtors, was not discharged by appellant, but he expressly reserved his right "against the remaining parties liable upon the note."

By operation of law, however, of course all the remaining parties were released and discharged *pro tanto* the amount paid and discharged by Mrs. Clericus. We think the provisions of § 3510 must be construed broadly. The third subdivision of that section provides that a person secondarily liable on an instrument is discharged by the discharge of a prior party. This would, of course, include in its terms prior indorsers as well as principal debtors, and the discharge of one co-maker would effect the discharge of another co-maker as well as subsequent indorsers, if that subdivision is to be construed as exclusive. The discharge of Emily Clericus upon her payment of half the debt would, therefore, operate as a discharge of her co-maker, Katherine Byrne. An indorser is a kind of surety. His responsibility is much like that of a guarantor. 20 Cyc. 1403.

As to these it was well settled, prior to the passage of the negotiable instruments act, that the release of one joint maker will not discharge the surety where all rights against the latter are reserved. 7 Cyc. 1047.

"It is held, however, that a contract to release the principal in which the rights against the guarantor are expressly reserved will not release the guarantor." 20 Cyc. 1478.

"The principle that whatever discharges the principal discharges the surety is of extended application, and it is operative whenever anything is done which relaxes the terms of the exact legal contract by which the principal is bound, or in anywise lessens, impairs, or delays the remedies which the creditor may resort to for its assurance or enforcement . . . Extension of time of payment is the most frequent form in which the creditor so deals with the principal as to discharge the surety; and whenever such indulgence is granted in pursuance of a binding legal contract, the surety is at once released from his obligations. . . . Under Negotiable Instrument Statute.—The statute defines a person 'primarily' liable as the person who by the terms of the instrument is absolutely required to pay the same, and declares that all other parties are 'secondarily' liable. Other sections of the

statute prescribe the conditions under which an instrument is discharged or which will result in the discharge of a person secondarily liable. Under those provisions and the further rule under the statute that a surety is primarily liable, the doctrine of the law of suretyship that a binding extension of time by the creditor to the principal releases the surety has, according to the authorities, been abrogated . . ." Daniel, Negotiable Instruments, § 1312, and cases cited.

Nor would the surety (considered as a surety merely) be discharged by indulgence to the principal, when there is an unqualified reservation of the creditor's remedies against the surety. Daniel, Negotiable Instruments, § 1322. Even under the doctrine of discharge of surety by discharge of the principal, the rule has been held not to apply to a case wherein the payee of a note becomes a surety on it by indorsing it to another in payment of his own debt or otherwise obtaining full value for it, because the doctrine applies only in the case of a strict construction of a contract for the benefit of such sureties as sign notes for the benefit of the principals, and without benefit or consideration for themselves. *National Bank of Asheville v. Sumner*, 119 N. C. 591, 26 S. E. 129; *Morgan v. Wickliffe*, 110 Ky. 215, 61 S. W. 13.

"In itself it is only an extinguishment of the debt *pro tanto*, which relieves the drawer or indorsers to that extent, and is, therefore, beneficial. . . . It is now settled that the holder may take part payment from any party, and sue the others for the residue. Even an agreement that part payment shall discharge the debt, will not discharge any party to the instrument, unless some other circumstance entered into the consideration." Daniel, Negotiable Instruments, § 1327.

Our opinion, therefore, is that the respondents were not released or discharged by the release and discharge of the prior party, Mrs. Clericus, except *pro tanto*, and that appellant reserved his rights against the other parties, including respondents, by the terms of the instrument of release, which he could rightfully do under subd. 5, § 3510, Rem. & Bal. Code (P. C. 357 § 239). The superior court was therefore

in error in sustaining the demurrers of respondents, and dismissing them.

Reversed and remanded, with instructions to overrule the demurrers, and for further proceedings.

MORRIS, C. J., and MAIN, J., concur.

CROW, J., took no part.