[No. 25601. Department Two. September 30, 1935.]

SEATTLE DISCOUNT CORPORATION, *Appellant*, v. HOLLY-WOOD INVESTMENT COMPANY *et al., Defendants*, S. J. LOMBARD, *Respondent*.[1]

*Stedman & Stedman*, for appellant.

*Louis E. Shela*, for respondent.

MITCHELL, J.—This is a suit on a promissory note, in which the complaint was amended to include foreclosure of a trust deed as a real estate mortgage. On

[1]Reported in 49 P. (2d) 475.

final hearing, the court denied recovery. Plaintiff has appealed.

The errors relied on are: (1) Refusal to enter judgment for plaintiff at the end of the first hearing; (2) denial of recovery at the termination of the trial; (3) denying plaintiff's motion for judgment notwithstanding the oral decision; (4) denying motion for new trial. All points are argued together by the appellant.

The facts leading up to the execution of the note in suit are as follows: Grace Gevurtz and Phil Gevurtz, her husband, owned all the stock in several corporations operating furniture stores and constructing and operating apartment houses. The Northwestern Security Company, a corporation, financed the Gevurtzes by direct loans and by buying from them conditional sales contracts and chattel mortgages.

In 1927, the Gevurtzes contracted to buy a site in Seattle for the construction of the Marlborough Apartments. The Northwestern Security Company financed the construction. At the latter's instance, two of its officers incorporated the Marlborough Investment Company, which took title to the apartment house and site. In the organization of the Marlborough Investment Company, Mrs. Gevurtz subscribed for all the stock except two shares, the two shares being issued to the officers of the Northwestern Security Company. The stock (with the exception of the two shares) was issued to Mrs. Gevurtz, but was not delivered to her; she, however, signed the stock on the back thereof.

On January 19, 1928, the Northwestern Security Company and the Gevurtzes entered into an agreement on the amount remaining due the Northwestern Security Company on account of financing the Marlborough construction and other Gevurtz enterprises. By this agreement, all the stock was to be assigned to the Northwestern Security Company as security for

the amount owing it; at the same time, the Gevurtzes were to, and did, continue to manage the Marlborough Apartments.

December 31, 1928, the Marlborough Investment Company conveyed the Marlborough Apartment house to F. S. Stimson Company in exchange for Hollywood Farm, of six hundred acres, with tools, machinery, equipment, livestock and all improvements, and a certain amount of cash. As a part of the transaction, the Marlborough Investment Company executed to the Stimson company the note for fifty thousand dollars involved in the present action, payable five years after date and secured by chattel mortgage on all the livestock, tools, machinery, equipment, greenhouses and contents and equipment, light and power plant, electric wiring, sewers, railroad spur, concrete road and water system on the Hollywood Farm. At that time, the Hollywood Farm was free of all encumbrances. The farm and all the personal property, by the above transaction, became the property of the Marlborough Investment Company.

About the same time, the trustees of the Marlborough Investment Company passed a resolution to the effect that the assets of that company were more than sufficient to pay all its liabilities, including stock subscriptions. Thereafter, the Marlborough Investment Company conveyed the greenhouses on the farm, and the equipment, together with twelve acres of land on which the greenhouses stood, to one Nicholas. It then conveyed the title to the remainder of Hollywood Farm to R. S. Walker as trustee.

Soon thereafter, the Gevurtzes sued the Northwestern Security Company, the Marlborough Investment Company, Nicholas, and Walker as trustee, setting forth the previous transactions and alleging that the Gevurtzes were the owners of all the capital stock of

the Marlborough Investment Company, and that the previous transactions regarding the stock of the Marlborough Investment Company were made for the security of the Northwestern Security Company, and further that the proceeds of the sale of the greenhouses, etc., were sufficient to pay their indebtedness. They therefore demanded a redelivery to them of the capital stock of the Marlborough Investment Company.

That action was subsequently compromised about December, 1929, by an agreement under which the Gevurtzes were to have returned to them the capital stock, but at the same time they were to assign it to C. P. Borberg, as trustee, for General Discount & Mortgage Company, which had become the assignee of the Gevurtzes; also by the agreement, the Marlborough Investment Company was to give its note for fifty thousand dollars (which is not involved in this action) to the Northwestern Security Company, secured by a mortgage on the Hollywood Farm, less so much of it as contained the greenhouses which had previously been conveyed as above set forth. December 31, 1929, the Gevurtzes executed an agreement or instrument showing the amount then owing by them to the General Discount & Mortgage Company as $103,000. By this agreement, the Marlborough Investment Company was to give the General Discount & Mortgage Company a mortgage on Hollywood Farm for $103,000 to secure the *individual* indebtedness of the Gevurtzes.

January 4, 1930, the Marlborough Investment Company executed the two mortgages as agreed and as just referred to, one for fifty thousand dollars to the Northwestern Security Company and the other for $103,000 to General Discount; both mortgages, however, recited that they were junior to the Stimson mortgage.

January 15, 1930, the Marlborough Investment Company changed its name to the Hollywood Investment Company, one of the defendants herein. February 11, 1930, the Hollywood Investment Company executed to the Stimson company a supplemental chattel mortgage which covered additional personal property located on the Hollywood Farm; this supplemental chattel mortgage was additional security for the fifty thousand dollar note here in suit.

In July, 1931, the General Discount & Mortgage Company instituted an action in the superior court alleging its insolvency. A receiver was appointed and shortly thereafter petitioned the court to foreclose the blanket mortgage executed by the Marlborough Investment Company for $103,000, securing the individual indebtedness of the Gevurtzes. On the same day, the receiver entered into an agreement with the Gevurtzes, agreeing that the Hollywood Investment Company was insolvent and that the receiver was to be permitted to foreclose the mortgage and assign the certificate of sale to the Gevurtzes for fifteen thousand dollars.

August 3, 1931, a decree of foreclosure in favor of the receiver was entered, and the receivership proceedings were thereupon dismissed. At the same time, Mrs. Gevurtz took title to the Hollywood Farm in her name and in the name of the defendant Pickard, her brother.

September 19, 1931, the Hollywood Investment Company, by Gevurtz as president, executed a bill of sale to the General Discount & Mortgage Company to all personal property covered by the Stimson chattel mortgage and supplemental chattel mortgage, but Gevurtz nevertheless remained in possession of the same.

By these transactions, the Hollywood Investment Company was divested of all of its assets and became

insolvent, yet Gevurtz remained in charge of all of the personal property on the farm.

September 15, 1931, the Stimson company sold its note (the one here in suit), balance then owing thirty-four thousand dollars, without recourse, to defendant Sumner J. Lombard, and assigned to him the chattel mortgages. On the same day, Lombard sold and delivered the note and chattel mortgages to the Seattle Discount Corporation, the plaintiff herein, for fourteen thousand dollars and fifty-seven acres of land near Kent. Lombard endorsed the fifty thousand dollar note, and at the same time executed a written instrument as guarantor for the payment of the note to the plaintiff, and secured the obligation by conveying the fifty-seven acres which he had received in the trade, in trust to the Puget Sound Title Insurance Company.

In July, 1932, prior to the due date of the fifty thousand dollar note, interest on it became delinquent. One William Edris, the moving spirit in the Seattle Discount Corporation, on its behalf, conferred with the Gevurtzes demanding payment of the interest. He did not, however, present the note for payment. Gevurtz made a small partial payment of delinquent interest. Thereafter, without any demand on the Gevurtzes, Edris demanded of Lombard, the defendant, that something be done by him with reference to payment on the fifty thousand dollar note. Lombard wanted the Gevurtzes to pay and was sure that they would pay if pressed. Edris threatened to foreclose unless payment was made.

After conference between Edris and Lombard, an arrangement was made, at the instance of Lombard, whereby his attorney, who later dropped out of the case, and who was conversant with the previous transactions, should draw the complaint in this action. That

was done, the action being brought by the Seattle Discount Corporation against the Hollywood Investment Company, the Marlborough Investment Company, the Gevurtzes, Lombard, and also against the Federal Land Bank, who, in the meantime, had become the real estate mortgagee of the Hollywood Farm. In that action, however, there was no allegation of presentment or dishonor of the note. It was alleged in the complaint that the Gevurtzes were the sole owners of the Marlborough Investment Company, subsequently changed to the Hollywood Investment Company, and it was further alleged that the affairs and properties of the Gevurtzes had become so commingled with those of the corporation as that the one was the *alter ego* of the other; further, that the Gevurtzes had converted certain grain, feed, etc., covered by the chattel mortgage, of the value of fourteen thousand dollars; and further, that the Gevurtzes had wrongfully diverted the assets of the corporation (the Hollywood Investment Company or the Marlborough Investment Company) by giving to the General Discount & Mortgage Company the mortgage on the corporation's assets for $103,000.

On demurrer of the Federal Land Bank, that corporation was dismissed. However, no order of dismissal was entered, it being stipulated that it be withheld until judgment in the main action should be entered, in order that all questions might be appealed at the same time.

The Gevurtzes answered the complaint herein, denying liability. Lombard also answered, admitting the allegations, but alleging a right of subrogation in himself as against the Gevurtzes.

Plaintiff subsequently instituted another action against Lombard and had a receiver appointed for the crops growing on the fifty-seven acres which had been

deeded to Lombard. It also had a writ of garnishment issued in that proceeding.

About October, 1933, after this suit was commenced, appellant received from the Gevurtzes an offer of settlement or release as to them personally. Thereupon, the appellant gave Lombard notice of the offer and gave him an opportunity to repurchase the note and chattel mortgages, so that he might take advantage of the offer if he wished. He did nothing about it, although it appears that the consideration offered was more than twice the value of the personal property sought to be released. As the trial court finds in his ruling at or near the conclusion of the case,

"The notice was then given to him [Lombard] that there was going to be an acceptance of the offer, and he put in some form of objection to it."

Some months later, the offer was accepted by the appellant, expressly reserving all rights against Lombard as endorser, among others, similar in principle to the transaction sustained and rule announced in *Davis v. Gutheil,* 87 Wash. 596, 152 Pac. 14. On March 14, 1934, plaintiff released the Gevurtzes and satisfied the chattel mortgages as to them. Immediately thereafter, plaintiff entered an order of dismissal as against all the defendants in the action except the Hollywood Investment Company, which was then insolvent, and Lombard. It then moved for judgment against Lombard.

Lombard then amended his answer, admitting the allegations of the complaint and affirmatively setting up that plaintiff had negligently allowed the Gevurtzes to dispose of personal property covered by the chattel mortgage, to the value of fourteen thousand dollars, and had released the chattel mortgages on property in excess of any amount remaining due on the note;

and that, by dismissing the Gevurtzes, it had deprived Lombard of his recourse and subrogation. Plaintiff admitted the allegations of the answer, but denied that Lombard had been prejudiced.

The case, as finally presented to the trial court and as it is presented on the appeal, is complicated. There were trials and retrials before three judges, from time to time, with amendments of the pleadings about as often. All of the record thus made was before the trial judge who entered the judgment from which the appeal has been taken and constitutes the record here. Much of the history of the case and its facts, as they have been given here, is incidental and not important with respect to the controlling points or questions involved, which rest upon Lombard's endorsement of the note, his written guaranty of September 15, 1931, and his deed of trust of real estate, on the same date, to the Puget Sound Title Insurance Company to secure the payment of his obligation, as those instruments relate to and are connected with the principal note in suit. The questions do not involve rights of a third person, but those only between the original parties to the transaction—Seattle Discount Corporation, appellant, and S. J. Lombard, respondent.

In consideration of $14,768.33, the respondent endorsed and delivered the note in suit to the appellant, and at the same time assigned and delivered the chattel mortgages, and also executed and delivered his written guaranty, as follows:

"And I, in consideration of the purchase of said note from me, do hereby guarantee unto the said Seattle Discount Corporation the full payment of said note, principal and interest, according to the terms thereof, to the same extent and effect as if I were an original maker of said promissory note, notwithstanding that I have endorsed said note upon the back thereof.

"And I do hereby authorize and empower the said

Seattle Discount Corporation to take all necessary steps and proceedings to enforce collection of said note and/or said chattel mortgages as fully and completely as if this assignment had not been made. Certain of said chattels have been released as appears of record in Volume 61 pages 128 and 129, Vol. 61, page 302, V l. 62, page 72 in the records of the Auditor of King County.''

At the same time and as part of the same transaction, the respondent executed and delivered the trust deed referred to as security for the payment of his guaranty obligation. The trustee mentioned in the deed appeared in the action by answer, disclaiming any interest in the land, except as trustee under the terms of the deed.

The respondent, for the consideration paid, became obligated as endorser of the note by writing his name upon the back of it, and also became obligated as guarantor or principal, it makes no difference which he may be called, under the facts in this case, by a separate and independent written obligation.

It is entirely clear upon the proof that the reasonable value of the chattels covered by the mortgages that were released by the appellant to Mrs. Gevurtz was much less than the amount paid for them by the appellant; indeed, the burden of the proof shows that they were worth not more than about six thousand dollars, and yet the total amount paid, $16,120, was credited on the note the respondent had agreed to pay.

He was in no way harmed by that transaction. He knew of the offer that later was accepted by the appellant and was given a chance to profit by it, if profit there was; and as guarantor, if he apprehended loss, he could have paid the debt and enforced the lien himself. ·

And even if it be held that the Gevurtzes, who were

released, were the real makers of the note in the name of the Hollywood Investment Company, the rule is the same:

"The surrender or release by the holder of a bill or a note of any security which he has received from the acceptor or maker, for the payment of the instrument, operates as a discharge of indorsers to the amount of the security so surrendered." 8 C. J., Bills and Notes, p. 620, § 861.

As guarantor, one is not discharged unless the security surrendered or lost equals or exceeds the amount of the debt secured. 28 C. J., Guaranty, pp. 1007-1008.

By the terms of his obligation, whatever name may be given it, he guaranteed "payment," not collection, from the original maker. By the terms of the instrument, he says that it is an agreement to pay "to the same extent and effect as if I were an original maker of said promissory note." That makes him primarily liable, for which promise he received consideration.

If, generally, the rule were otherwise, the appellant has not waived its rights against the respondent in this case by not suing for judgment against him as endorser or on his guaranty obligation and for foreclosure of his trust deed to secure it, as the pleading was framed in the original complaint in this action, nor is respondent in a situation to claim failure of notice and demand before suit as a defense, if otherwise applicable; all because, upon learning that the appellant intended bringing suit, he succeeded in having his own attorney at that time (not now in the case) determine the form of the action, the parties to be sued, the relief to be sought, and supervise and control the precise allegations of the original complaint; he had his then attorney actually sign the original complaint as one of the attorneys for the plaintiff, appellant, and was present in the consultation in making up

the complaint as it was finally filed in commencing the action. Subsequent changes in the scope of relief appellant was entitled to and demanded necessitated amendments of the pleadings to the extent they were amended and were justified under the particular circumstances of the case. In the course of the action through the trial court, the allowance of such amendments was entirely within the discretion of the trial court, which was in no sense abused.

Nor is there any right of subrogation in favor of the respondent. The comparatively worthless chattels covered by the chattel mortgages were sold for more than they were worth and to that extent reduced respondent's liability.

The judgment is reversed and the cause remanded, with directions to enter judgment in favor of the appellant and against the respondent for the balance due upon the note and his instrument guaranteeing the payment of it, with interest thereon, together with an attorney's fee, and that the trust deed executed by respondent to the Puget Sound Title Insurance Company be declared a mortgage and foreclosed in the manner provided by law; and that, in the event the property should not bring a sufficient amount at sheriff's sale to cover the amount of the judgment, costs and accruing interest, plaintiff have a deficiency judgment for the balance against the respondent S. J. Lombard, according to the views hereinbefore expressed.

MILLARD, C. J., STEINERT, BLAKE, and HOLCOMB, JJ., concur.