IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Dependency of:<br><br>A.G.L., A.S.L., and L.E.L. | No. 86090-9-I<br><br>DIVISION ONE<br><br>ORDER GRANTING MOTION<br>TO PUBLISH |

Respondent, State of Washington, Department of Children, Youth, and Families (DCYF), moved for publication of the opinion filed on October 14, 2024 and appellant, E.L., filed an answer to the motion, taking no position on publication. A majority of the panel has determined that the motion should be granted.

Now, therefore, it is hereby

ORDERED that the motion to publish is granted.

FOR THE COURT:

_Díaz, J._

_Birk, J._                              _Hazelrigg, ACJ_

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Dependency of:<br><br>A.G.L., A.S.L., and L.E.L. | No. 86090-9-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

DÍAZ, J. — E.L. did not appear at a hearing where the State sought to terminate his parental rights over A.G.L., A.S.L., and L.E.L.[1] The superior court then entered a default judgment and later denied his subsequent motion to vacate that judgment. E.L. claims the denial of that motion was in error. We disagree. E.L. does not show the court abused its discretion in finding he did not present sufficient evidence either to establish a prima facie defense to the termination or that his absence at the hearing arose from excusable neglect. Thus, we affirm.

I.      BACKGROUND

E.L. is the father of A.G.L., L.E.L., and A.S.L. In November 2021, the State petitioned for an order of dependency following an incident where E.L. "was

---

[1] We use E.L.'s and his childrens' initials to protect their privacy.

arrested for domestic violence against the mother while she was holding one of their children" and E.L. "was reported to have driven from the scene with the children while under the influence."[2]

In February 2022, E.L. entered into an agreed proposed dependency order with the Department of Children, Youth, and Families (DCYF). As we will explain further below, the order the court entered required E.L., inter alia, to complete evaluations and comply with treatment recommendations to address substance abuse and mental health challenges. The court also required the psychological evaluation to include domestic violence and parenting components.[3]

At a dependency review hearing in May 2022, the court found E.L. to be non-compliant with those court ordered services. Starting in July 2022, E.L. stopped responding to DCYF's attempts to contact him. In September 2022, DCYF learned from the children's paternal aunt and caretaker that E.L. was no longer visiting his children. At hearings in October 2022 and March 2023, the court again found E.L. to be non-compliant with services in which he was required to participate.

In May 2023, DCYF filed a petition for termination of E.L.'s parental rights.

---

[2] The initial November 2021 dependency petition and the later discussed petition for termination only listed A.G.L. as the child covered by those actions. However, subsequent orders (and underlying filings in the record) listed all three children. On appeal, the father does not contest that the termination order applies to all three of his children.

[3] In 2019, E.L. had entered into a similar agreed dependency order solely concerning A.G.L. As with the above mentioned 2021 dependency order, the court required E.L. to complete, inter alia, a substance use evaluation and a mental health assessment, with a domestic violence component. In 2021, the court dismissed the 2019 dependency action, despite evidence that E.L. had not complied with these requirements.

On July 28, 2023, DCYF personally served E.L. the two-page summons while he was incarcerated at the Snohomish County Jail. The summons stated that E.L. was required to attend a termination hearing on August 21, 2023, that his parental rights could be terminated even in his absence, and that he needed to reapply for a public defender to represent him on the termination case. E.L. was released from jail on August 15, 2023.

The court held a termination hearing as scheduled on August 21. E.L. did not attend, but his dependency counsel was present, though they did not know where their client was. The court heard testimony from a DCYF social service specialist and, the next day, it entered a default judgment terminating E.L.'s parental rights.

E.L. started in-patient substance abuse treatment the next month. While in treatment, E.L. contacted a DCYF caseworker who informed him the court had terminated his parental rights. In early October, E.L. contacted his dependency attorney and moved to vacate the default judgment. That same month, E.L. successfully completed the in-patient substance abuse treatment program.

E.L. filed a declaration in support of his motion to vacate, claiming in pertinent part that he had lost the summons in jail, had forgotten the hearing date, and had assumed he was still represented by the attorney handling the dependency proceedings. Following a hearing in October 2023, the court denied E.L.'s motion to vacate. E.L. timely appeals.

## II. ANALYSIS

A. Scope and General Standard of Review

A court may set aside a default judgment in accordance with CR 60(b). CR 55(c)(1). CR 60(b) sets out eleven bases for relief. CR 60(b)(1)-(11). E.L. brought his motion to vacate under three of these bases, but on appeal, assigns error to the court's denial of relief only under CR 60(b)(1) and (b)(11).

"We review a CR 60(b) motion for abuse of discretion." In re Marriage of Persinger, 188 Wn. App. 606, 608, 355 P.3d 291 (2015). "'A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons.'" Id. at 609 (quoting In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997)). In other words, an "abuse of discretion is found if the trial court relies on unsupported facts, takes a view that no reasonable person would take, applies the wrong legal standard, or bases its ruling on an erroneous view of the law." Gildon v. Simon Prop. Grp., Inc., 158 Wn.2d 483, 494, 145 P.3d 1196 (2006). "Our review of a CR 60(b) decision is limited to the trial court's decision, not the underlying order the party seeks to vacate." Persinger, 188 Wn. App. at 609. In other words, we are deciding whether the court abused its discretion in denying the motion to vacate, not the merits of the termination order.

B.     CR 60(b)(1)

  1. Requirements for CR 60(b)(1) Relief and for Terminating Parental Rights

We begin by recognizing the following general principles applicable to CR 60(b) motions. "[D]efault judgments are disfavored because the preference is to resolve cases on the merits." Sellers v. Longview Orthopedic Assocs., 11 Wn. App. 2d 515, 520, 455 P.3d 166 (2019). "[D]eciding whether to set aside a default judgment is a matter of equity and the 'primary concern is whether justice is being

4

done.'" Id. (quoting VanderStoep v. Guthrie, 200 Wn. App. 507, 517, 402 P.3d 883 (2017)). "'What is just and equitable must be determined based on the specific facts of each case.'" Id. (quoting VanderStoep, 200 Wn. App. at 517-18). Even so, "an orderly system of justice mandates that parties comply with a judicial summons." Norton v. Brown, 99 Wn. App. 118, 123, 992 P.2d 1019 (1999).

More specifically as to CR 60(b)(1), our Supreme Court has set out a four factor test for setting aside a default judgment under that section. White v. Holm, 73 Wn.2d 348, 352, 438 P.2d 581 (1968). These factors are:

(1)     That there is substantial evidence extant to support, at least prima facie, a defense to the claim asserted by the opposing party;
(2)     that the moving party's failure to timely appear in the action, and answer the opponent's claim, was occasioned by mistake, inadvertence, surprise or excusable neglect;
(3)     that the moving party acted with due diligence after notice of entry of the default judgment; and
(4)     that no substantial hardship will result to the opposing party.

Id. "The first two are the *major* elements to be demonstrated by the moving party, and they, coupled with the secondary factors, vary in dispositive significance as the circumstances of the particular case dictate." Id. (emphasis added).

When deciding the State's claim to "terminate the right of a parent to relate to his or her natural child," "a Washington court uses a two-step process." In re Welfare of A.B., 168 Wn.2d 908, 911, 232 P.3d 1104 (2010). First, the court determines whether the State established the six elements listed in RCW 13.34.180(1) by clear, cogent, and convincing evidence.[4] While "no explicit finding

---

[4] Those six elements are that (a) "the child has been found to be a dependent child"; (b) "the court has entered a dispositional order"; (c) "the child has been removed or will, at the time of the hearing, have been removed from the custody

5

of current parental unfitness is required . . ., if the State proves the allegations set out [in these six elements], an implicit finding of current parental unfitness has been made." In re Dependency of K.R., 128 Wn.2d 129, 141-42, 904 P.2d 1132 (1995).

Second, the State must establish that termination is in the best interests of the children by a preponderance of the evidence.[5] A.B., 168 Wn.2d at 911; RCW 13.34.190(1)(b). "Only if the first step is satisfied may the court reach the second." A.B., 168 Wn.2d at 911.

Moreover, "terminations are fact specific and must be decided on a case by case basis." In re Welfare of N.M., 184 Wn. App. 665, 672, 346 P.3d 762 (2014). The "parent-child relationship necessarily involves both the parent and the child; thus, it is necessary to consider whether a parent is capable of parenting the *particular* child given the child's *specific, individual* needs." In re the Parental Rights to K.M.M., 186 Wn.2d 466, 490, 379 P.3d 75 (2016) (emphasis added). In other words, the law requires a parent's claims and evidence in termination proceedings be particularized to their parental abilities and children.

---

of the parent for a period of at least six months"; (d) "services ordered . . . have been expressly and understandably offered or provided," which services are "capable of correcting the parental deficiencies within the foreseeable future"; (e) that "there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future"; and (f) that "continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home." RCW 13.34.180(1). Only elements (d) and (e) are at issue here. "Clear, cogent, and convincing evidence exists when the ultimate fact in issue is shown by the evidence to be 'highly probable.'" In re Dependency of K.R., 128 Wn.2d 129, 141, 904 P.2d 1132 (1995) (quoting In re Sego, 82 Wn.2d 736, 739, 513 P.2d 831 (1973)) (internal quotation marks omitted).
[5] "The preponderance of the evidence standard requires that the evidence establish the proposition at issue is more probably true than not true." In re Dependency of H.W., 92 Wn. App. 420, 425, 961 P.2d 963 (1998).

Finally, as our review touches upon the order terminating parental rights, courts must consider that parents have a "fundamental liberty interest . . . in the care, custody, and management of their child[ren]." Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). And we must consider that the "'State and the child have a strong interest not only in establishing a stable and permanent home for the child, but also in doing it as soon as possible.'" In re Welfare of L.R., 180 Wn. App. 717, 727, 324 P.3d 737 (2014) (quoting In re Dependency of C.R.B., 62 Wn. App. 608. 615, 814 P.2d 1197 (1991)).

On appeal, E.L. and the State disagree only about the two "major" White factors, namely, whether E.L. put forth sufficient facts to establish a prima facie defense and to establish his failure to timely appear was due to excusable neglect. As such, discussion of the "secondary" factors is unnecessary. We address each major factor in turn.

## 2. Prima Facie Defense

A request to vacate a default judgment "shall be made by motion filed in the cause stating the grounds upon which relief is asked, and supported by the affidavit of the applicant or the applicant's attorney setting forth a concise statement of . . . the facts constituting a defense to the action or proceeding." CR 60(e)(1). "The prime purpose of the rule is to prove to the court that there exists, at least prima facie, a defense to the claim." Griggs v. Averbeck Realty, Inc., 92 Wn.2d 576, 583, 599 P.2d 1289 (1979). In other words, the rule "avoids a useless subsequent trial if the defaulted defendant cannot bring forth facts to make such a showing when seeking to vacate the default." Id.

"[T]he defendant satisfies its burden [to establish a prima facie defense] . . . if it is able to produce evidence which, if later believed by the trier of fact, would constitute a defense to the claims presented."  TMT Bear Creek Shopping Ctr., Inc. v. PETCO Animal Supplies, Inc., 140 Wn. App. 191, 202, 165 P.3d 1271 (2007).  "When evaluating the facts the defendant presents to support a prima facie case, the trial court does not act as a trier of fact that weighs the evidence."  VanderStoep, 200 Wn. App. at 519.  Further, the "court must take the evidence, and reasonable inferences therefrom, in the light most favorable to the movant," here E.L.  Pfaff v. State Farm Mut. Auto. Ins. Co., 103 Wn. App. 829, 835, 14 P.3d 837 (2000).[6]

In arguing that the first major White factor weighs in his favor, E.L. avers that his defense to the termination action is that the State failed to establish (1) the elements of RCW 13.34.180(1) which requires it to show "there is little likelihood [his parental deficiencies] will be remedied in the near future" and, thus, the sufficiency of the evidence on his "current parental fitness," and (2) termination was in the best interest of the children.

More specifically, as to the likelihood of remedying parental deficiencies,

---

[6] Citing to In re Parental Rights to C.E.C.L., No. 84156-4-I, slip op. at 4 (Wash. Ct. App. Apr. 10, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/841564.pdf, E.L. preliminarily argues the superior court improperly weighed evidence in seeking to determine whether there was a "meritorious" defense, and not simply whether he brought forth evidence to establish a prima facie defense.  We disagree.  The court's order found that E.L. "was ordered to complete" certain services and "there is no evidence that the father engaged" in those services.  Such an order betrays no weighing.  We cite to this unpublished opinion as it is "necessary for a reasoned decision" given E.L.'s reliance on it in his analysis of this aspect of his challenge.  GR 14.1(c).

E.L. argues the court abused its discretion by discounting the evidence that establishes he complied with his substance abuse treatment. His argument relies nearly[7] entirely on a declaration he signed in support of his motion to vacate, and his counsel's declaration attaching proof of his enrollment in and completion of substance abuse treatment. We disagree.

Neither declaration includes any reference to E.L. being evaluated psychologically or engaging in mental health or domestic violence treatment, let alone taking steps to address his parenting challenges.[8] In other words, while there is evidence—and it is laudable—that he completed in-patient substance abuse treatment, there is a complete absence of any evidence he has remedied, or even begun to remedy, each of the parental deficiencies identified in the termination petition.

Namely, the agreed dependency order required E.L. participate in the following services:

Drug/alcohol evaluation
Random UA testing for 90 days with no missed positive or dilute UAs.
*Psychological evaluation with a DV and parenting component.*

---

[7] EL's motion to vacate attached two documents that are not relevant to his prima facie defense and which are not otherwise challenged: (1) the Snohomish County Jail's booking record, which shows he was incarcerated at the time of service until about a week before his termination hearing, and (2) a DCYF report to the court, which was offered to show the State's misconduct by omission. Neither are relevant here.

[8] Within E.L.'s thirteen paragraph declaration, eight paragraphs focus on E.L.'s failure to attend the termination hearing and efforts to vacate the default judgment, which go to the second White factor and not his prima facie defense. Three paragraphs focus on his post-jail substance abuse treatment and other commendable efforts to secure housing and employment. And the final substantive paragraph states that, following his release from jail, he was "trying to focus on sobriety and getting [him]self in a position where [he] could be there for [his] kids."

(Emphasis added).  Further, in the agreed dependency order, E.L. specifically stipulated, and the court found, that

> the parents need to address issues within their relationship with each other and with regards to substance use. Father agrees *the services contained in this order are necessary and appropriate to be able to parent*.

(Emphasis added).  Had he complied with the services he agreed were necessary and appropriate, the State would not have been able to prove the statutory elements for termination.  In other words, it was the failure to comply with the terms of the agreed dependency order that triggered the filing of the termination petition, which expressly identified the failure to comply with those court-ordered services to address the identified deficiencies as the basis of the petition.

Indeed, at oral argument, E.L.'s counsel acknowledged both that "there is *nothing in the record* with regard to the DV treatment or the mental health treatment," and that domestic violence was identified as one of E.L.'s deficiencies in the agreed dependency order.  Wash. Ct. of Appeals oral argument, In re the Dependency of A.G.L., A.S.L., and L.E.L., No. 84372-9-I (July 24, 2024), at 2 min., 34 sec. through 2 min., 42 sec, video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2024071138/?eventID=2024071138 (emphasis added); id. at 3 min., 43 sec. through 3 min., 52 sec. (respectively).

Instead, for the first time, E.L.'s appellate counsel argued that "the DV [requirement] was in the context of him having a relapse.  And so, those are questions that would have to be meted out, whether the DV . . . was *intertwined*

10

with the substance abuse problem." Id. at 3 min., 26 sec. through 3 min., 43 sec. (emphasis added).

We are unconvinced. There is simply nothing in the record that substance abuse treatment is primary to, "intertwined," or obviates the need for E.L. to complete the entirety of his court-ordered obligations. Thus, proof of completion of one obligation does not defeat the State's claim that E.L. has not met his obligation to address other outstanding parental deficiencies. Therefore, his evidence could not be "later believed by the trier of fact" to "constitute a defense to the claims presented." T.M.T., 140 Wn. App. at 202.

Moreover, E.L. makes only limited and generalized connections between his treatment efforts and the needs of his children. Such generalized argumentation is inadequate to put forth a prima facie defense as to "whether a parent is capable of parenting the *particular* child given the child's *specific, individual* needs." K.M.M., 186 Wn.2d at 490 (emphasis added); N.M., 184 Wn. App. at 672.

In fact, only the first and eighth paragraph of E.L.'s declaration reference his children at all; the former stating he was "the father of the above named children" and the latter saying he sought post-jail treatment to "focus on sobriety and get[] myself in a position where I could be there for my kids." While E.L.'s goals are admirable, his generalized assertions alone are not enough under K.M.M. to make a prima facie defense to the DCYF claim he has outstanding parental deficiencies.

As to the second part of his putative defense to the State's action—namely,

that the State failed to establish termination is in the best interest of the children—E.L.'s briefing cites primarily to numerous articles on how separation can negatively affect children. However, E.L. only generally discusses these articles and, again, makes no attempt to tie the findings of those articles specifically to any evidence in the record of his parenting abilities or the specific needs of his children. K.M.M., 186 Wn.2d at 490.

At oral argument before this court, E.L.'s appellate counsel instead argued, for the first time, that

> the[] [State] ha[s] to show by a preponderance of the evidence that termination is the best interests of the child. He has alleged he is the father. We have recent caselaw . . . J.M.W., that says that we need to – we need to start with some *presumption* at this point that these kids, that removal is traumatic in some sense.

Wash. Ct. of Appeals oral argument, supra at 5 min., 01 sec. through 5 min., 26 sec. (citing In re Dependency of J.M.W., 199 Wn.2d 837, 514 P.3d 186 (2022)) (emphasis added).

Indeed, our Supreme Court in J.M.W. cautions that "[s]eparating a child from their family, even for an hour, can cause great trauma." 199 Wn.2d at 840. But the court also states that sometimes "separation is necessary to protect a child who has no parent, guardian, or custodian capable of caring for them." Id. It does not appear our Supreme Court intended to create a "presumption" in either direction.[9]

---

[9] Further, the court in J.M.W. was considering "whether [the Washington Indian Child Welfare Act (WICWA)] required the State to take active efforts . . . before taking [J.M.W.] into emergency foster care" in light of how "Native children were separated from their families not because of any danger to them but, instead, in an effort by the government to destroy Native tribes and nations." J.M.W., 199

In short, we hold the court did not abuse its discretion in finding E.L. did not establish a prima facie defense based on evidence he completed in-patient substance abuse treatment or on generalized statements about the best interests of children. In turn, we hold the court did not abuse its discretion in finding E.L. failed to establish a prima facie defense to termination under <u>White</u>, and weighing this factor against vacatur.

3. <u>Mistake, Inadvertence, or Excusable Neglect</u>

As for the second major <u>White</u> factor, E.L. argues that, while "parents served with dependency petitions are provided with notice of their right to counsel and information directing them to contact the local office of appointing such counsel, the practice and custom in Snohomish county undermines" this notice because "upon filing the dependency petition, the State reaches out to the Office of Public Defense" (OPD). In other words, he claims this "courtesy . . . understandably creates in parents confusion and expectations." And in his declaration in support of his motion to vacate, E.L. stated that, given his experience in two prior dependency actions, he suffered from such confusion and misplaced expectations because he thought "an attorney . . . would reach out to him when needed." Moreover, he argues his failure to appear was not deliberate and was caused in part because he "lost his papers" and in part because he was "feeling sick" in jail. While we are sympathetic to the difficulties of those who are incarcerated and facing multiple types of legal processes, we hold these reasons

---

Wn.2d at 840. In short, the holding in <u>J.M.W.</u> was largely focused on WICWA and was not expressing a generally applicable presumption, as E.L. claims.

are legally unavailing on the record presented here.

The concept of excusable neglect "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993) (considering the term "excusable neglect" as it is used in Federal Rule Bankruptcy Procedure (FRBP) 9006(b)(1) and comparing it to its use in inter alia Federal Rule Civil Procedure (FRCP) 60(b)(1)).

There is no dispute that E.L. received a two-page summons while incarcerated that plainly warned him that the State was seeking to terminate his parental rights, the details about the termination hearing, and the need to reapply for a public defender. This summons was based on a Washington Pattern form.

Specifically, the first page of the summons first "notified [E.L.] that a petition . . . was filed with this court alleging that . . . the above named child is dependent and a permanent termination of the parent-child relationship should occur. A termination Petition, if granted, will result in permanent loss of your parental rights." It then advises him that "[t]he court has scheduled a hearing on . . . *Monday, August 21, 2023, at 9:00 a.m.*" and included the address of the hearing. Next, the summons warns E.L. that he "should be present at this hearing" and "[i]f [he] do not appear *the court may enter an order in [his] absence* . . . Permanently terminating [his] parental rights."

The second page of the summons states at the top that "*[y]ou are summoned and required* to appear at the hearing on the date, time and place set forth above." Immediately below, the summons contains a section titled "*Advice*

14

*of Rights"* listing five bullets. The first bullet states that "[y]ou have important legal rights, and you must take steps to protect your interest." The third bullet states that "[y]ou have the right to be represented by a lawyer" and that if "you cannot afford a lawyer, you have the right to request that the court appoint a lawyer to represent you at public expense." The final bullet warns that

> YOU ARE <u>NOT</u> REPRESENTED BY A LAWYER IN THIS TERMINATION PROCEEDING EVEN IF YOU WERE APPOINTED A LAWYER IN THE PRIOR DEPENDENCY CASE. YOU MUST REAPPLY FOR APPOINTMENT OF A LAWER IN THIS CASE. IF YOU OR A LAWYER ON YOUR BEHALF DOES NOT APPEAR IN THIS CASE, YOU MAY BE DEFAULTED AND TERMINATION OF YOUR PARENTAL RIGHTS MAY BE GRANTED.

This same bullet then lists the Snohomish County Office of Public Defense and DCYF in bold underlined text. The summons also listed the phone number and address for the Snohomish County Office of Public Defense and the phone number for DCYF. This summons is consistent with the requirements of RCW 13.34.070(2)-(6). Finally, E.L. does not dispute the validity of the return of service stating he was personally served with this summons on July 28, 2023.

In sum, it is undisputed that E.L. received plain and statutorily-compliant notice of what the State was trying to do, the consequences of failing to act, and all the details he would need to defend his parental rights.

This court recently rejected a claim of excusable negligence on similar facts in <u>In re Dependency of C.M.L.</u>, 28 Wn. App. 2d 40, 537 P.3d 1044 (2023). There, the appellant-parent argued that her failure to appear at the termination hearing resulted from excusable neglect because "she struggled to understand the summons because of dyslexia." <u>Id.</u> at 59. That case also involved Snohomish

15

County which issued a nearly identical summons. Id. at 54 & 59-60. There too, the appellant was personally served. Id. at 59. As here, the appellant did not tell anyone that she did not understand the summons. Id. at 60. As here, the appellant did not point to any conflict in her schedule. Id. The appellant simply "got her dates mixed up." Id.

Ultimately, we held that "[f]orgetting the time of a termination hearing after formal notice and several reminders does not amount to excusable neglect." Id.; see also In re Welfare of S.I., 184 Wn. App. 531, 544, 337 P.3d 1114 (2014) (parent's "disregard of" or "failure to read the termination petition and summons to appear is not excusable neglect."). While E.L. may not have received "several reminders" of the hearing, C.M.L., 28 Wn. App. 2d at 60, there is no claim on appeal of governmental misconduct and no authority that the State must provide such reminders or otherwise any parent can establish excusable neglect under CR 60(b)(1).

Therefore, we hold the court did not abuse its discretion in finding E.L.'s failure to appear did not arise from "mistake, inadvertence, or excusable neglect" under White, and weighing this factor (and thus both major factors) against vacatur.

### 4. Equity

E.L. also argues that equity requires we set aside the default termination order. Indeed, a "CR 60(b)(1) determination to set aside a default judgment 'is not a mechanical test,' but 'a matter of equity.'" C.M.L., 28 Wn. App. 2d at 62 (quoting Little v. King, 160 Wn.2d 696, 703-04, 161 P.3d 345 (2007)). Further, "[o]ur

overarching concern" on a court's decision on a motion to vacate "'is whether that decision is just and equitable.'" Id. (quoting TMT, 140 Wn. App. at 200). "[W]e employ an equitable analysis to determine what is proper 'by the facts of each case, not by a hard and fast rule applicable to all situations.'" Id. (quoting Little, 160 Wn.2d at 703) (internal quotation marks removed).

Here, we hold it was not an abuse of discretion for the court to find that the equities weigh in favor of denying the motion to vacate. In termination proceedings, the "'State and the child have a strong interest not only in establishing a stable and permanent home for the child, but also in doing it as soon as possible.'" L.R., 180 Wn. App. at 727 (quoting C.R.B., 62 Wn. App. at 615). E.L.'s agreed dependency order from February 2022 required that E.L.'s children remain outside the custody of E.L. as a result of his identified parental deficiencies. This dependency order, as in C.M.L., was roughly "a year and a half before the termination proceeding" and "[v]acating the termination order would cause more delay and disruption to the children's interest in a stable and permanent home." 28 Wn. App. 2d at 62. In other words, "[s]tarting the termination process anew would be a hardship for the children and a barrier to permanency." Id. at 62-63.

In response, E.L. argues that the "lost opportunity for negotiating" for something less than termination supports his argument for equity. In doing so, he cites numerous articles on the general benefits of alternate forms of adoption agreements. However, E.L. fails to connect his generalized discussion of such agreements specifically to his children, nor does he explain why he could not have pursued such an agreement earlier. K.M.M., 186 Wn.2d at 490; N.M., 184 Wn.

App. at 672. Thus, this argument is unpersuasive.

Having considered both major factors and equitable considerations, this court's decision in C.M.L. is also instructive in how ultimately to balance all the factors. There, as here, the secondary factors favored the motion to vacate. 28 Wn. App. 2d at 61-62. But, because we found that "[t]he primary factors under CR 60(b)(1) and equitable consideration of all the factors weigh against vacating the default termination," we held that the "trial court did not abuse its discretion by denying D.L.'s motion to vacate." Id. at 63. Therefore, we similarly so hold.

## C. CR 60(b)(11)

E.L. presents a page-long argument in which he avers that, because the court did "[did] not address the father's claim under CR 60(b)(11)," the trial court failed to exercise discretion and thereby abused its discretion."

Indeed, a court can abuse its discretion by failing to act when required by law. In re Marriage of Mishko & Kehr, 23 Wn. App. 2d 571, 577-78, 519 P.3d 240 (2022) (discussing the court's failure to implement required domestic violence restrictions under RCW 26.09.191(1)). And, here, the court's order did not expressly reference CR 60(b)(11). However, CR 60(b)(11) relief is reserved for "extraordinary circumstances involving irregularities extraneous to the proceeding." Shandola v. Henry, 198 Wn. App. 889, 895, 396 P.3d 395 (2017). Neither in E.L.'s motion to vacate nor on appeal does he explain how his situation involved "extraordinary circumstances involving irregularities extraneous to the proceeding." Id. It is E.L.'s burden below and on appeal to make such a showing, and for that reason, we hold the court did not abuse its discretion in implicitly

rejecting E.L.'s claim for CR(b)(11) relief.

## III.    CONCLUSION

For the reasons above, we affirm the court's denial of E.L.'s motion to vacate the default judgment terminating his parental rights.

Diaz, J.

WE CONCUR:

Birk, J.